**Robert Lee WHITE, Petitioner-Appellant,**

v.

**W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.**

No. 81–1087.

United States Court of Appeals, Fifth Circuit.

March 8, 1982.

Rehearing Denied April 15, 1982.

Robert M. Brown, Court-appointed, Lubbock, Tex., for petitioner-appellant.

Mark White, Atty. Gen., Gerald C. Carruth, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before BROWN, GEE and GARWOOD, Circuit Judges.

GEE, Circuit Judge:

This appeal concerns the proper standard of review as applied to a state court jury verdict of competency prior to criminal proceedings. Appellant White was convicted of capital murder by a Texas state court and sentenced to life imprisonment. He was afforded a competency hearing before trial pursuant to Tex.Code Crim.Pro. art. 46.02 (Vernon). A jury found White competent to stand trial, and the Texas Court of Criminal Appeals affirmed White's conviction but held that it could not review the sufficiency of the evidence of incompetence because its review was limited to questions of law. *White v. State*, 591 S.W.2d 851, 856 (Tex.Crim.App.1979).[1]

White then sought relief by writ of habeas corpus in federal district court. That court denied habeas relief and adopted the opinion of the Texas Court of Criminal Appeals. On White's challenge to the sufficiency of the jury's finding of competence, the district court, after a review of "all the evidence," stated:

> The issue presented ... is whether the testimony from the psychiatrist and the two clinical psychologists, each of whom examined the petitioner on three occasions, greatly predominates to show that petitioner was incompetent to stand trial and that the testimony adduced by the prosecution from lay witnesses who had occasion to observe petitioner on a frequent basis was not adequate to negate

1. Specifically, the Texas Court of Criminal Appeals cited a Texas constitutional provision, then applicable to courts of civil appeals, art. V, § 6, which states in part: "Provided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error ...." The court then stated, 591 S.W.2d 856:

> After an examination of the constitutional and statutory provisions relating to the jurisdiction of the Court of Criminal Appeals, we conclude that this court has no fact jurisdiction as do the courts of civil appeals, and cannot "unfind" a vital factfinding by a jury. Since we do not have a jurisdiction to pass upon the great weight and preponderance of the evidence, appellant's contention is overruled.

The court of criminal appeals noted, however, that White "does not contend there is not some probative evidence in support of the verdict," *id.* at 854, and further observed that:

> What appellant is asking this court to do is to consider all the evidence—that which supports the verdict and that which does not—and to set aside the verdict if we conclude that it is so against the weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, regardless of whether there is evidence of probative force to support it.

*Id.* at 855. By its approving citation of Calvert, *"No Evidence" and "Insufficient Evidence" Points or Error*, 38 Tex.L.Rev. 361 (1960), we believe that the court indicated its approval of the rule that a mere scintilla of evidence constitutes no evidence and that it will and does review the testimony to determine if the verdict is supported by more than a scintilla of evidence. *See id.*, 38 Tex.L.Rev. at 363–65. *See also, e.g., Easley v. State*, 529 S.W.2d 522 (Tex.Crim.App.1975).

or rebut petitioner's claim of incompetence. The jury answered special issues adverse to petitioner's position. The evidence adduced was legally sufficient to enable a rational trier of facts to make the same findings which the jury made. White appeals from the denial of habeas relief. We affirm.

White was afforded a competency hearing in accordance with *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) (due process compels a hearing on competency when facts or events at trial raise a bona fide doubt as to the defendant's competence; it is denial of due process to try an incompetent on a criminal charge). Under Texas law, the issue of competency to stand trial is determined in advance of trial on the merits where there is evidence to support a finding of incompetence. Tex. Code Crim.Pro. art. 46.02 § 2(a) (Vernon). A person is deemed incompetent to stand trial if the accused does not have

> (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against him.

*Id.* § 1(a). A defendant is "presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." *Id.* § 1(b).

White does not challenge either the constitutionality of Texas' definition of competence or the constitutionality of its procedures for a competency hearing. White's claim of error is substantive, not procedural.[2] His dispute is with the jury verdict of competence, and he urges this court to review all the evidence presented in the state court proceeding in order to decide de novo whether he proved his incompetence by a preponderance of the evidence.

█ White's claim clearly states a cognizable claim for habeas relief. As this court has recently pointed out,

> . . . a criminal defendant enjoys the fundamental substantive guarantee of not

being tried if he is unable to "consult with his lawyer with a reasonable degree of rational understanding" or if he does not possess "a rational as well as a factual understanding of the proceedings against him."

*Acosta v. Turner,* 666 F.2d 949, 954 (5th Cir. 1982), (quoting *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). The right to raise this substantive constitutional right in post-conviction proceedings has been recognized in federal courts since long before *Pate v. Robinson, supra. See Nathaniel v. Estelle,* 493 F.2d 794, 796 (5th Cir. 1974).

White's plea for de novo review is based on *Bruce v. Estelle,* 483 F.2d 1031 (5th Cir. 1973), *on appeal after remand,* 536 F.2d 1051 (5th Cir.), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1976). *Bruce I* was a habeas proceeding in which this court found that due process was not satisfied by the post-conviction proceeding to determine competence afforded in that case. Accordingly, we remanded for a "full and meaningful" hearing that would not employ the *M'Naughton* rule as the controlling standard to determine competency. The district court, on remand, conducted a *nunc pro tunc* competency hearing, and the trial judge concluded that the accused could assist in his own defense, could rationally understand the proceedings against him, and was therefore competent. *Bruce II,* on appeal from the remand, reversed the trial judge's determination of competency. On the applicable standard of review, the court stated:

> As enunciated in [*United States v. Makris,* 535 F.2d 899 (5th Cir.), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1976)], this second stage determination of legal incompetency is subject to a review more stringent than the clearly erroneous rule. To insure protection of valuable constitutional rights, this court is bound to take a hard look at the ultimate competency "finding."

536 F.2d at 1059–60.

*United States v. Makris* guides our inquiry. In that case we pointed out that:

---

**2.** *See, e.g., Acosta v. Turner,* 666 F.2d 949, 954     (5th Cir. 1982).

The question of competency, of course, is a mixed question of law and fact which has direct constitutional repercussions. It thus would be improper for a federal court to give conclusive weight to a state court finding of competency without reanalyzing the facts.

535 F.2d at 907. We also noted that in *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the Supreme Court had emphasized that competency should not be cast in an operative fact mold and thus insulated from constitutional adjudication.[3] What this means, according to the *Makris* court, is that:

... we should take a hard look at the trial judge's ultimate conclusion and not allow the talisman of clearly erroneous to substitute for thorough-going appellate review of quasi-legal issues. . . . We stress, however, that we by no means adopt the requirement of a de novo review. We say no more than that the clearly erroneous rule is to be limited to its proper sphere. It is not to be discarded.

535 F.2d at 907.

Both *Bruce v. Estelle* and *United States v. Makris*, involving appellate court review of a federal trial court's retroactive competency hearing held pursuant to this court's remand, say little about the proper standard of review when examining a state court's pretrial competency hearing before a jury, however.[4] Our inquiry must necessarily be considerably less than de novo review. In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court determined the appropriate standard of review in a federal habeas proceeding resulting from a claim of insufficient evidence to support a state criminal conviction. Echoing this circuit's words in *Makris*, the Supreme Court pointed out that "a federal court has a duty to assess the historic facts when it is called upon to apply a constitutional standard to a conviction obtained in a state court." *Id.* at 318, 99 S.Ct. at 2788. The Court proceeded to point out that the relevant question for an appellate court "is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789 (emphasis in original). This judicial review of all the evidence "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Id.* The test laid down in *Jackson* is thus a safety net designed for appellate court review of constitutional error. The *Jackson* test grew out of the constitutional rule requiring proof beyond a reasonable doubt for a criminal conviction.[5] The *Jackson* standard accommodates both the constitutionally compelled burden of proof under state law (proof beyond a reasonable doubt) and the presumption of correctness due jury verdicts generally. In this case, we have a constitutionally grounded state burden of proof declaring that an accused is not to be subjected to a criminal trial if there is a demonstration of incompetence by a preponderance of the evidence before trial.[6]

---

3.  "But 'issue of fact' is a coat of many colors. It does not cover a conclusion drawn from uncontroverted happenings, when that conclusion incorporates standards of conduct or criteria for judgment which in themselves are decisive of constitutional rights. Such standards and criteria, measured against the requirements drawn from constitutional provisions, and their proper applications, are issues for this Court's adjudication. . . . Especially in cases arising under the Due Process Clause it is important to distinguish between issues of fact that are here foreclosed and issues which, though cast in the form of determinations of fact, are the very issues to review which this Court sits."

420 U.S. at 175 n.10, 95 S.Ct. at 905 n.10 (quoting *Watts v. Indiana*, 338 U.S. 49, 51, 69 S.Ct. 1347, 1348, 93 L.Ed. 1801 (1949)).

4.  Note, too, that *Bruce* and *Makris* both involved review from a trial *judge's* specific fact-findings. "Hard look" review was thereby facilitated.

5.  *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

6.  While appellant White does not challenge the constitutionality of the Texas burden of proof, we note in passing that our precedents indicate that "it is entirely proper to place the burden

We also have a jury verdict of competence entitled to a presumption of correctness. By contrast to *Bruce* and *Makris*, our court now sits in review of a state jury verdict that has already been examined by a district court on the basis of "all the evidence." Ours is second-tier review, as in *Jackson v. Virginia*. Our standard, therefore, must be that appropriate to a *Jackson*-type safety net, a final bulwark against convictions unsoundly based in evidence. Viewing the evidence in the light most favorable to the jury verdict, we must ask whether any rational trier of fact could conclude that the evidence does not predominate in favor of the appellant's claim of incompetence.

Applying this standard to the evidence presented to the jury below does not yield easy results. This is, admittedly, a close case. The evidence at White's competency hearing suggests a battle between three experts, a psychiatrist and two clinical psychologists, and two lay "witnesses," the deputy sheriff present at White's arrest and his jailer of two years. A psychiatrist, Dr. Weddige, testified that he believed White suffered from hallucinations, could not distinguish between reality and fantasy, and that, while White understood the charges against him, he was incompetent to consult with his lawyers. The psychiatrist's diagnostic tests confirmed that White was "chronically psychotic," *i.e.*, suffered from a schizophrenia of long standing. In the face of severe cross-examination, the psychiatrist maintained that he did not believe White was faking his symptoms. Both clinical psychologists confirmed these findings. Their battery of clinical tests led them to

conclude that White was a paranoid schizophrenic with an IQ of 69–75 (showing "borderline mental retardation"). Both psychologists also testified that they believed that White was not competent to stand trial and suffered from "organic brain syndrome." Defense counsel thereafter testified that his client was not competent to talk to him. The state's experts, a neurologist and a radiologist, testified that neither had attempted to examine White for evidence of mental disorder. Their expertise was limited to examination for organic brain damage, and their conclusion was that no organic brain damage greater than one inch in diameter could conceivably be present. Apparently because of these experts' limited expertise, no one asked either for his opinion of White's competence.

Thus, the only state witnesses to testify that White was competent were nonexperts, White's jailer and a deputy sheriff. Both stated that White behaved like other prisoners and appeared to communicate normally with his attorneys. Throughout, the state urged the jury to find that the "jail-wise" defendant had simply fooled his medical examiners. To this end, the state pointed out that, while the lay witnesses had spent long periods of time with the defendant, the experts had merely consulted with him for a brief two hours. Through effective cross-examination, the state showed inconsistencies or contradictions in the experts' testimony,[7] demonstrated the experts' dependence upon subjective symptoms, such as defendant's descriptions of his hallucinations, and cast doubt on the objectivity of the expert evidence presented.[8]

---

on the petitioner." *Bruce v. Estelle*, 536 F.2d at 1059 (citing *Drope v. Missouri*, 420 U.S. at 174, 95 S.Ct. at 905). "Similarly, proof by a preponderance ... is all that is required .... To place a greater burden on the petitioner might bring up due process considerations." *Id.*

7. Thus, the state showed on cross-examination that Dr. Weddige, in an earlier written report, had written of White:

He knew why he was being examined. He seems quite informed about competency versus incompetency, and the meaning that this had for him insofar as what would happen to

him.... With reference to whether he is competent or incompetent to assist his lawyer in preparation of his defense, in honesty—I don't know.

In the written report, Dr. Weddige said that White's condition would only "impair him from defending himself ...." Dr. Weddige retreated from these earlier views on the witness stand.

8. Thus, the state on cross-examination elicited testimony from one of the clinical psychologists that his report was written basically to

■ As we have often pointed out, "expert opinion is not binding on the trier of fact if there is reason to discount it." *Makris*, 535 F.2d at 908; *Mims v. United States*, 375 F.2d 135, 143–44 (5th Cir. 1967). In this case, we cannot say that the jury "arbitrarily ignored"[9] the expert testimony presented in favor of the personal views of laymen. The evidence presented a genuine issue of credibility between the views of the laymen and the experts. The views of White's two clinical psychologists were at least partly challenged by the state experts' conclusions regarding organic brain damage. The jury was, of course, not bound by the medical experts' "application of legal standards to arrive at a competency conclusion," since this is ultimately their task. *See Makris*, 535 F.2d at 908. Cases pitting lay and expert testimony against each other turn, of course, on their particular facts. *See, e.g., United States v. Mota*, 598 F.2d 995, 998–1000 (5th Cir.), *cert. denied*, 444 U.S. 1084, 100 S.Ct. 1042, 62 L.Ed.2d 770 (1979) (testimony of lay witnesses, DEA agents, rebutting uncontradicted testimony of an expert psychiatric witness sufficient, as a matter of law, to present question to jury); *United States v. Collier*, 453 F.2d 1173 (5th Cir. 1972) (ten lay witnesses supporting government's claim of sanity did not, as a matter of law, sufficiently rebut testimony of seven psychiatrists who had all concluded defendant was insane); *Brock v. United States*, 387 F.2d 254 (5th Cir. 1967) (testimony of three lay witnesses, only one of whom observed defendant at time of crime, insufficient to rebut testimony of one psychiatrist who extensively examined defendant after criminal activity). The facts underlying our recent opinion in *United States v. Andrew*, 666 F.2d 915, 921 (5th Cir. 1982), come the closest to the situation *sub judice*. That case, dealing with the government's burden of proving sanity beyond a reasonable doubt, summarized the underlying evidence of sanity as follows:

> We find that we are presented with expert government testimony . . . which

does nothing to negate the defense testimony . . . that there was a high probability that Andrew was legally insane. If this testimony, buttressed by the defense lay testimony, were the only testimony, the case for sufficiency would be difficult to sustain.
>
> We are presented, however, with the testimony of government lay witnesses who observed Andrew at the time of the crimes. Under this court's decisions in *Mota*, [*United States v. Hall*, 583 F.2d 1288 (5th Cir. 1978)], and *Mims*, such testimony provides sufficient evidence, as a matter of law, to sustain the jury verdict. Even in the face of expert testimony that Andrew could have seemed normal while suffering legal insanity, the lay testimony asserting normal behavior is considered sufficient to present a jury question. . . . Thus, in spite of equivocal expert testimony by the government, we are compelled to affirm the jury verdict of sanity.

*Id.* In this case, the state's expert testimony certainly did little, if anything, to negate White's experts' testimony of incompetence. The state proceeded, however, to call lay witnesses and to cross-examine White's experts. Viewing the evidence in the light most favorable to the jury verdict, we find that a reasonable juror could have decided that White failed to show his incompetence by a preponderance of the evidence.

White's second ground for habeas relief, a claim that there was insufficient corroborative evidence to support the capital murder conviction, does not merit much discussion. White's claim is based on Texas law requiring corroborative evidence of the elements of the *corpus delicti* of capital murder. *Ruff v. State*, 157 Tex.Cr.R. 514, 249 S.W.2d 922 (Tex.Crim.App.1952); *Lott v. State*, 141 Tex.Cr.R. 366, 148 S.W.2d 1102 (1941). White alleges that there was insufficient evidence to corroborate his written confession of robbery to establish the *corpus delicti* of capital murder.

■ We doubt, though we need not decide, that the Texas rule on corroborative

---

bolster and corroborate what the other clinical psychologist had already stated in his report.

9. *Brock v. United States*, 387 F.2d 254, 257 (5th Cir. 1967).

evidence is a cognizable constitutional claim on collateral review by a federal court. *See, e.g., Llewellyn v. Stynchcombe*, 609 F.2d 194, 196 (5th Cir. 1980).[10] In any case, the state courts, both trial and appellate, as well as the district court below, found that the circumstantial evidence presented at trial sufficiently corroborated the appellant's confession, and we adopt the opinion of the Texas Court of Criminal Appeals on this point. 591 S.W.2d at 863–64. The Texas Court of Criminal Appeals' discussion of the evidence presented supports its conclusion that there was sufficient corroborative evidence, including evidence of tire tracks and eyewitness testimony, that tended to support the contents of White's confession. Insofar as White is attempting to raise a question of sufficiency of the evidence, under *Jackson v. Virginia, supra*, we have no doubt that the circumstantial evidence, together with White's confession, was amply sufficient for a jury to find White guilty beyond a reasonable doubt.

AFFIRMED.

---

10. As we stated in *Cronnon v. Alabama*, 587 F.2d 246, 250 (5th Cir.) (quoting 5th Cir. cases), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979):

We have repeatedly admonished that "we do not sit as a 'super' state supreme court" in a habeas corpus proceeding to review errors under state law .... The "mere violation of evidentiary rules by the state trial court does not in itself invoke habeas corpus relief, but only where the violation of the state's evidentiary rules results in a denial of fundamental fairness should habeas be granted."

(citations omitted).