No. 81–6937.   WHITE v. ESTELLE.   C. A. 5th Cir.   Certiorari denied.

JUSTICE MARSHALL, dissenting.

The Court of Appeals held that the appropriate standard to be applied to petitioner's due process claim was whether, "[v]iewing the evidence in the light most favorable to the [finding of competence], . . . any rational trier of fact could conclude that the evidence does not predominate in favor of the appellant's claim of incompetence." 669 F. 2d 973, 977 (1982). While noting that "[t]his is, admittedly, a close case," *ibid.*, the appellate court concluded that the evidence was sufficient for a rational trier of fact to find White competent to stand trial. For the reasons set forth below, I would grant the petition for certiorari in order to determine whether petitioner's constitutional claim should be reconsidered under a less deferential standard that until now has been applicable to such claims on federal habeas review.

I

On February 11, 1975, petitioner Robert Lee White was indicted in Lubbock County, Tex., on the charge of capital murder. Shortly thereafter, petitioner's competency to stand trial was called into question by his attorneys. On June 28, 1975, the trial court granted defense counsel's motion for a private psychiatric examination and evaluation of the defendant, directing that White be released from jail for testing at the Southwest Center for Psychological and Vocational Testing. On three occasions, the court granted defense counsel's motions for further neurological and psychiatric examinations. On September 3, 1976, the court ordered an examination by a disinterested, qualified expert

to determine White's competence to stand trial.[1]   The appointed psychiatrist reported that White had been psychotic "for at least seven to eight years."

In January 1977, the court, finding that there was some evidence that White was not competent, empaneled a jury to determine White's competency to stand trial.   At the competency hearing, defense counsel called the court-appointed psychiatrist and two psychologists who had also previously examined White.   Based upon their diagnostic tests and observations, the experts testified that White was "chronically psychotic," that is, he suffered from schizophrenia of long standing, characterized by hallucinations and an inability to distinguish between reality and fantasy.   They also testified that petitioner's IQ of 69–75 indicated "borderline mental retardation."   The defendant's experts concluded that while he understood the charges against him, White's mental disorders rendered him incompetent to consult with his attorneys. One of the defendant's attorneys gave testimony confirming that White was not able to assist in his defense.

The prosecution called two experts, a neurologist and a radiologist, who testified that they found no evidence of organic brain damage, but expressed no view as to White's competence.   The prosecution's remaining witnesses, White's jailer and a Deputy Sheriff, stated that White behaved like other prisoners and appeared to communicate normally with his attorneys.   Based primarily upon the testimony of these lay witnesses and his cross-examination of the defense witnesses, the prosecutor urged that the defendant had misled his examiners into believing that he was mentally disturbed.

The judge instructed the jury that "a person is incompetent to stand trial if he does not have sufficient present ability

---

[1] Texas Code Crim. Proc. Ann., Art. 46.02, § 3(a) (Vernon 1979), permits a court to "appoint disinterested experts experienced and qualified in mental health or mental retardation to examine the defendant with regard to his competency to stand trial and to testify at any trial or hearing on this issue."

to consult with his lawyer with a reasonable degree of rational understanding; or, a rational as well as factual understanding of the proceedings against him." The jury returned a verdict that stated simply: "We, the jury, find the defendant, ROBERT LEE WHITE, competent to stand trial at the time of this trial, to-wit: January 5, 1977." White was then tried and convicted of capital murder. On appeal, the Texas Court of Criminal Appeals found that it lacked jurisdiction to consider whether White had properly been found competent to stand trial. *White* v. *State*, 591 S. W. 2d 851, 854–856 (1979).

White then petitioned for a writ of habeas corpus in the United States District Court for the Northern District of Texas. Relying on the opinion of the Texas Court of Criminal Appeals, the District Court denied the petition on the ground that "[t]he evidence adduced was legally sufficient to enable a rational trier of facts to make the same findings which the jury made."

The Court of Appeals affirmed. In searching for the proper standard of review to be applied to the jury verdict of competency to stand trial, the Court of Appeals noted that in *Drope* v. *Missouri*, 420 U.S 162 (1975), this Court found it necessary to undertake its own analysis of the facts concerning the defendant's competency so that "'the appropriate enforcement of the federal right may be assured.'" *Id.*, at 174–175, and n. 10. Nevertheless, the Court of Appeals rejected the "hard look" given the trial court's conclusion in *Drope*. 669 F. 2d, at 976. In its place, the Court of Appeals adopted the more deferential review set forth in *Jackson* v. *Virginia*, 443 U. S. 307 (1979), which governs claims that the evidence at trial was insufficient to prove the elements of a crime beyond a reasonable doubt. Under *Jackson* a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*, at 319 (emphasis in original).

Applying this standard to the issue of competency, the court below determined that there had been sufficient evidence for a rational trier to find White competent to stand trial.

## II

Whether a defendant is competent to stand trial is a question of federal constitutional law. Due process forbids a State to try or convict a defendant who is incompetent to stand trial. *Drope* v. *Missouri, supra; Pate* v. *Robinson*, 383 U. S. 375 (1966). To be competent to stand trial for the purposes of the Due Process Clause, the defendant must have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope* v. *Missouri, supra*, at 171.[2]

A federal court acting on a petition for a writ of habeas corpus must make an independent decision on the question of competence, see *Drope* v. *Missouri, supra*, at 175, and n. 10, just as it must decide any other federal constitutional question independently of a state-court determination.[3] In each case, "the federal habeas petitioner who claims he is detained pursuant to a final judgment of a state court in violation of

---

[2] This Court has approved a test of incompetence which seeks to determine whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky* v. *United States*, 362 U. S. 402, 402 (1960). The State of Texas has adopted essentially the same standard. Tex. Code Crim. Proc. Ann., Art. 46.02, § 1(a) (Vernon 1979).

[3] Thus, on collateral review of a state conviction, a federal court must independently determine that a defendant's confession was voluntary under the Fifth Amendment, that postindictment delay did not violate the Sixth Amendment right to a speedy trial, that the defendant was provided effective assistance of counsel, or that the right to an impartial jury was not impaired by extraneous influences. See, *e. g., Cuyler* v. *Sullivan*, 446 U. S. 335, 341–342 (1980); *Brewer* v. *Williams*, 430 U. S. 387, 401–403 (1977); *Brown* v. *Allen*, 344 U. S. 443 (1953); *Watts* v. *Indiana*, 338 U. S. 49, 51–52 (1949) (opinion of Frankfurter, J.).

the United States Constitution is entitled to have the federal habeas court make its own independent determination . . . on the merits of that claim." *Wainwright* v. *Sykes,* 433 U. S. 72, 87 (1977).

In making an independent appraisal of the habeas petitioner's constitutional claim, a federal district judge must sometimes defer to a state court's resolution of "issues of fact" underlying its determination. 28 U. S. C. § 2254(d). Those antecedent findings which a habeas court may be required to accept are limited "to what are termed basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators. . . .'" *Townsend* v. *Sain,* 372 U. S. 293, 309, n. 6 (1963), quoting *Brown* v. *Allen,* 344 U. S. 443, 506 (1953) (opinion of Frankfurter, J.). Express factual determinations by a state court after a full and fair evidentiary hearing generally must be accepted unless they are not fairly supported by the record. *Sumner* v. *Mata,* 449 U. S. 539 (1981); *Townsend* v. *Sain, supra,* at 312–313, 316; 28 U. S. C. § 2254(d)(8). Even where the state trier has made no express findings, this presumption of correctness must also be afforded to findings of fact which "the District Court [can] reconstruct" either because the trier's "view of the facts is plain from his opinion or because of other indicia." 372 U. S., at 314–315.

In this case, the jury was not asked to make and did not make any express findings to support its legal conclusion. Nor can such findings be fairly reconstructed.[4] Therefore,

---

[4] A federal district court may "reconstruct the findings of the state trier of fact" when the state court's "view of the facts is plain from [its] opinion." *Townsend* v. *Sain,* 372 U. S. 293, 314 (1963). In addition, when a determination in favor of the constitutional claim follows inexorably from particular findings of fact, a federal district court "may assume that the state trier found the facts against the petitioner" in rejecting the constitutional claim. *Id.,* at 315. In this case, no particular view of the facts can be inferred from the conclusory language of the jury's one-sentence verdict, and there are no findings of fact upon which the competency determination necessarily turned. Therefore, "[t]he federal court cannot exclude the

the District Court was obligated to make its own factual determinations on the basis of the record of the state proceeding and, if necessary to resolve disputed issues of fact, on an evidentiary hearing. *Townsend* v. *Sain, supra,* at 313–316, 318–319.[5]

This Court's opinion in *Drope* v. *Missouri,* 420 U. S. 162 (1975), indicates that when a state-court determination of competency is unaccompanied by findings of fact, a federal court must undertake independent factfinding, as it would in comparable "situation[s] in which the 'so-called facts and their constitutional significance [are] . . . so blended that they cannot be severed in consideration.'" *Townsend* v. *Sain, supra,* at 315, quoting *Rogers* v. *Richmond,* 365 U. S. 534, 546 (1961). The question in *Drope* was whether the defendant "was deprived of due process of law by the failure of the trial court to order a psychiatric examination with

---

possibility that the [trier] believed facts which showed a deprivation of constitutional rights and yet (erroneously) concluded that relief should be denied." *Id.,* at 315–316.

[5] "In any event, even if it is clear that the state trier of fact utilized the proper standard, a hearing is sometimes required if his decision presents a situation in which the 'so-called facts and their constitutional significance [are] . . . so blended that they cannot be severed in consideration. . . .' Unless the district judge can be reasonably certain that the state trier would have granted relief if he had believed petitioner's allegations, he cannot be sure that the state trier in denying relief disbelieved these allegations. If any combination of the facts alleged would prove a violation of constitutional rights and the issue of law on those facts presents a difficult or novel problem for decision, any hypothesis as to the relevant factual determinations of the state trier involves the purest speculation. The federal court cannot exclude the possibility that the trial judge believed facts which showed a deprivation of constitutional rights and yet (erroneously) concluded that relief should be denied. Under these circumstances it is impossible for the federal court to reconstruct the facts, and a hearing must be held." *Townsend* v. *Sain, supra,* at 315–316. See also Wright & Sofaer, Federal Habeas Corpus for State Prisoners: The Allocation of Fact-Finding Responsibility, 75 Yale L. J. 895, 935–946 (1966); Note, Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1135–1137 (1970).

respect to his competence to stand trial." 420 U. S., at 163–164. The state courts had "viewed the evidence as failing to show that during trial petitioner had acted in a manner that would cause the trial court to doubt his competence." *Id.*, at 178. This Court did not consider itself bound by the state courts' view of the evidence, for "in such circumstances we believe it is 'incumbent upon us to analyze the facts in order that the appropriate enforcement of the federal right may be assured.'" *Id.*, at 175. See also *id.*, at 175, n. 10. The Court concluded, based upon its independent examination of the record, that "[n]otwithstanding the difficulty of making evaluations of the kind required in these circumstances, . . . the record reveals a failure to give proper weight to the information suggesting incompetence." *Id.*, at 179.

In the instant case, the constitutional question is somewhat different from the question in *Drope*. The due process question is not whether the evidence of incompetency was such as to require a hearing, but whether the evidence adduced at a hearing indicated that the defendant was incompetent to stand trial. But this difference does not warrant any greater deference to the state conclusion with regard to competency than was accorded by this Court in *Drope*.

*Jackson* v. *Virginia*, 443 U. S. 307 (1979), does not call for a more deferential attitude toward state-court conclusions of law than has been required by *Townsend* v. *Sain* and succeeding cases. *Jackson* involved federal review of a claim that the defendant was convicted in the absence of proof sufficient to convince the trier of fact of guilt beyond a reasonable doubt. See 443 U. S., at 309; *id.*, at 326 (STEVENS, J., concurring in judgment); cf. *In re Winship*, 397 U. S. 358, 361 (1970). The Court concluded that the proper standard of review "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U. S., at 319. When a federal ha-

beas court makes this legal determination as to the sufficiency of the evidence, it does so independently of the state court's determination of the same legal question. Both the state courts and the federal courts must conduct the same inquiry as to sufficiency. The *Jackson* standard is thus completely consistent with the traditional scope of habeas review. See *id.*, at 318 (citing *Drope* v. *Missouri* and *Townsend* v. *Sain*).

## III

The courts below faced the difficult question whether petitioner's mental disorders made him unable to consult with his attorney and prepare his defense to the extent required by due process. Unfortunately, such a determination can never be made with certainty or precision. Courts must consider many factors. The testimony of expert witnesses recounting their observations of the defendant's behavior and mental processes, along with their professional diagnoses, is, of course, highly relevant. The court also must take into account the observations of lay witnesses, and particularly the observations of the defendant's counsel, with respect to the defendant's ability to reason, to remember, to cooperate, and to communicate. The court's own observations of the defendant may also be relevant, though even the most irrational individual may appear normal to an untrained observer. The defendant's mental condition must be considered in the context of the totality of the circumstances of the case, including the complexity of the charges and of the defense, and the likely length of the trial.

In this case, the jury initially made the difficult due process determination after a legally correct, though undetailed, instruction on the applicable standard of competency to stand trial. While the jury may be equally qualified to make the findings of fact upon which the determination must be based, I have little doubt that a judge ordinarily is better qualified to resolve the constitutional question on the basis of whatever facts are found. See *Lyles* v. *United States*, 103 U. S.

1126

App. D. C. 22, 27, 254 F. 2d 725, 730 (1958) (opinion of Prettyman and Burger, JJ.) ("the competency of the accused at the time of trial to understand the charges against him and to assist in his defense is a legal question for the judge, not for the jury"), cert. denied, 356 U. S. 961 (1958). A judge is generally aware of what a defendant must do to participate in his defense. A judge may be guided by his reading of previous cases resolving questions of competency to stand trial and may develop useful experience in making the competency determination. Yet in this case, every state and federal court that faced the question simply deferred to the jury's application of constitutional law once it was found that there was "sufficient" evidence upon which to conclude that White was competent to stand trial.

The deferential review undertaken by the federal courts below denied petitioner his right to an independent determination of his constitutional claim. It was improper to assume, in the absence of any express findings of fact, that the jury resolved all disputed issues of fact in the manner most favorable to a determination that the defendant was competent to stand trial. Instead, the District Court was required to make an independent resolution of disputed factual issues and then to apply the constitutional standard to the facts that it found. I would grant certiorari to address the lower courts' departure from these accepted principles for collateral review of a state-court conviction. I dissent from the Court's refusal to do so.