Francisco GOMEZ, Petitioner–Appellant,

v.

Gerardo ACEVEDO, Warden, East Moline Correctional Center, Respondent–Appellee.

No. 94–3873.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1996.[1]

Decided Feb. 3, 1997.

1. Both parties submitted supplemental briefs on October 21, 1996 regarding the proper standard of review.

Jerold S. Solovy, Edward F. Malone (argued), Jeffery D. Colman, Jenner & Block, Chicago, IL, for Petitioner–Appellant.

Arleen C. Anderson, Office of the Attorney General, Michael A. Hurst (argued), Office of the Attorney General, Criminal Appeals Division, Chicago, IL, for Respondent–Appellee.

Before COFFEY, KANNE, and ILANA DIAMOND ROVNER, Circuit Judges.

KANNE, Circuit Judge.

Francisco Gomez appeals from a district court final order that denied him a writ of habeas corpus. Gomez alleges that he is being held in the custody of the respondent at the East Moline Correctional Center in violation of the Due Process Clause of the Fourteenth Amendment. More specifically, he argues that his conviction in Illinois state court for delivery of a controlled substance was not supported by sufficient evidence to find him guilty beyond a reasonable doubt, as the Due Process Clause requires. We hold that the new § 2254(d) of Title 28 (as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, § 104, 110 Stat. 1214, 1218 (1996))

mandates that federal courts give deferential review to state court decisions on sufficiency of the evidence claims. We find in this case that Gomez has not met the high burden that the AEDPA now requires, and we therefore affirm the District Court's decision not to issue the writ.

## I. HISTORY [2]

On August 21, 1989, Petitioner Gomez's co-defendant, Arturo Martinez, sold one kilogram of cocaine to an undercover Drug Enforcement Agency (DEA) special agent at the Holiday Inn in Hillsdale, Illinois. Gomez, who is an acquaintance of Martinez, was also present at the hotel at various times with Martinez that night. Gomez was convicted of delivery of a controlled substance in a bench trial in Illinois' Cook County Circuit Court on March 19, 1991. In his habeas petition, however, Gomez protests his innocence of any involvement in the drug transaction.

Martinez and the DEA agent negotiated the drug deal over the phone during the day of August 21, 1989. That evening, the agent called Martinez to say that he was at the hotel and ready to complete the deal. Martinez told the agent that he wanted to count the money before turning over the drugs and that he would have a friend bring the drugs to the hotel only after the money was counted.

Shortly after 9 p.m., a state police officer conducting surveillance at the hotel parking lot witnessed Martinez arrive at the hotel in a Camaro. Martinez went into the hotel to the DEA agent's room where the agent let Martinez count the money. Martinez then said he would page his friend who would bring the cocaine. Martinez made a phone call from the agent's room, but when he did not receive a call back, he told the agent that his friend probably could not return the call without knowing the agent's room number at the hotel. Martinez then left the room saying he was going to page his friend from the hotel lobby. Around 9:40 p.m., a DEA agent stationed in the lobby witnessed Martinez making a phone call. Martinez then went back to the hotel room and told the agent there that the friend would arrive in 20 minutes with the cocaine. Martinez never identified Gomez as the friend.

Approximately 20 minutes later, however, the police officer in the parking lot witnessed Gomez arrive on a motorcycle and then enter the hotel. The agent in the hotel room testified that Gomez knocked on the door at about 10 p.m. and that Martinez left the room to talk with Gomez in the hallway, where the agent observed them through a peephole. (This testimony is somewhat inconsistent with that of the agent in the lobby, who testified that Martinez left the hotel around 10 p.m. and then returned to the hotel room a few minutes later with Gomez.) After talking with Gomez, Martinez came back into the room and told the agent that Martinez would exchange the cocaine outside in the parking lot. The agent, however, refused to move the deal outside. Martinez agreed to do the deal the agent's way, but Martinez and Gomez then left the hotel in Martinez's Camaro at about 10:08 p.m.

Gomez testified at trial that Martinez drove him to a gas station where Martinez made a phone call and then drove Gomez back to the hotel. Gomez denied talking with Martinez or anyone else that night about selling cocaine, and he also denied possessing cocaine at any time that night. Sometime before 11 p.m., the agent in the hotel received a call from Martinez who said that he had the cocaine and would be returning alone in 20 minutes. Both Martinez and Gomez returned to the hotel a little after 11 p.m. The officer stationed in the parking lot observed both of them leave the car and walk around the parking lot for about a minute. Gomez then walked over to the sidewalk while Martinez moved the Camaro a couple of parking spaces over. Martinez got out of the car, opened the hood, and then closed it again. The officer was unable to see what either Gomez or Martinez was doing while the hood was up. Martinez and Gomez then walked side-by-side into the hotel, and Gomez waited in the lobby while Martinez went back to the hotel room. At

---

**2.** We would remind counsel for the petitioner that a statement of the case in an appellate brief should be free of any argument or comment. *See* Fed. R.App. P. 28(a)(4); 7th Cir. R. 28(d)(1).

approximately 11:12 p.m., Martinez entered the room and gave the agent a brown paper bag containing one kilogram of cocaine. Both Martinez and Gomez were then arrested. Neither Martinez nor Gomez was ever seen carrying the cocaine into the hotel, and Gomez's fingerprints were not found on any of the contraband.

Gomez testified at trial that he was at the Hillsdale hotel on August 21 because of a $500 loan he had made to Martinez a week before. Gomez cleared only $350 per week at his job, but he said the $500 loan came from three weeks of vacation pay he received on August 14. Gomez said Martinez called him at around 9 p.m. on August 21 telling him to come to the hotel to get the loan repaid. Gomez testified that he wanted the money as soon as possible because he wanted to leave on a vacation to California with his children. The prosecution stipulated that Gomez had received the vacation pay on August 14, but the prosecution also presented Gomez's prior conviction for possession of a controlled substance as evidence relevant to his credibility.

The state trial judge convicted Gomez, stating that he did not believe Gomez's testimony and that the prosecution had proven that Martinez and Gomez were acting in concert. The trial court sentenced Gomez to 18 years in prison. Gomez appealed to the Appellate Court of Illinois on two issues: 1) whether Martinez's statements were improperly admitted at trial under the coconspirator exception to the hearsay rule, and 2) whether the evidence was sufficient to prove Gomez guilty beyond a reasonable doubt. The Appellate Court rejected both arguments and affirmed the conviction. *People v. Gomez*, 246 Ill.App.3d 1106, 213 Ill.Dec. 76, 658 N.E.2d 546 (1993). Gomez then petitioned for leave to appeal to the Illinois Supreme Court, but Gomez raised only the hearsay issue and not the sufficiency of the evidence claim. The Illinois Supreme Court denied

the petition. *People v. Gomez*, 152 Ill.2d 567, 190 Ill.Dec. 898, 622 N.E.2d 1215 (1993). Gomez subsequently petitioned for a writ of habeas corpus in the U.S. District Court for the Northern District of Illinois. The District Court rejected the petition, which raised only the sufficiency of the evidence claim. *Gomez v. Dobucki*, No. 94 C 2161, 1994 WL 621958 (N.D.Ill. Nov.4, 1994). The District Court, however, granted Gomez a certificate of probable cause, thereby allowing Gomez to appeal to this court.[3]

## II. ANALYSIS

### A. Exhaustion and Procedural Default

Before we reach the merits of Gomez's petition, we must first determine whether federal review is barred because either 1) Gomez failed to exhaust state remedies, *see* 28 U.S.C. § 2254(b); or 2) Gomez's state conviction rests on an independent and adequate state procedural ground, *see Coleman v. Thompson*, 501 U.S. 722, 729–32, 750, 111 S.Ct. 2546, 2553–55, 2564–65, 115 L.Ed.2d 640 (1991). Although the exhaustion and the procedural default inquiries are closely related, they nonetheless pose distinct questions.

■ Gomez failed to raise his sufficiency of the evidence claim either in his direct appeal to the Illinois Supreme Court or in any state post-conviction review proceeding. Regarding the exhaustion requirement, the state post-conviction review process technically remains open to Gomez. Gomez's failure to avail himself of that process is not fatal, however, because we have generally not required petitioners to exhaust that option if the effort would be futile. *See Cawley v. DeTella*, 71 F.3d 691, 694 (7th Cir.1995). On post-conviction review in Illinois, "[D]eterminations of the reviewing court on direct appeal are *res judicata* as to issues actually decided and issues that could have been

---

3. As amended by the AEDPA, 28 U.S.C. § 2253 now requires a "certificate of appealability" prior to a habeas appeal. That provision does not apply to Gomez, however, because he legitimately relied on the predecessor statute which required a "certificate of probable cause." Although we held in *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996) (en banc), that some provisions of the AEDPA apply to already-pending claims, we explicitly noted that requiring a "certificate of appealability" where a "certificate of probable cause" has already been issued would violate the presumption against statutory retroactivity. *Id.* at 863; *cf. Landgraf v. USI Film Products*, 511 U.S. 244, 263–81, 114 S.Ct. 1483, 1496–1505, 128 L.Ed.2d 229 (1994).

raised on direct appeal but were not are waived." *People v. Coleman,* 168 Ill.2d 509, 214 Ill.Dec. 212, 220, 660 N.E.2d 919; 927 (1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 91, 136 L.Ed.2d 47 (1996). Thus, regardless of whether one views Gomez's sufficiency of the evidence claim as barred by *res judicata* (because the Appellate Court of Illinois adjudicated the claim) or by waiver (because Gomez did not raise the claim when petitioning the Illinois Supreme Court for leave to appeal), any attempt by Gomez to seek state post-conviction review would be futile. The exhaustion requirement therefore is satisfied.

■ The distinction between *res judicata* and waiver is relevant, however, to whether Gomez *procedurally defaulted* his sufficiency of the evidence claim. The State asserts that Gomez defaulted the claim by not including it in his petition to the Illinois Supreme Court. Although we have stated in the past that a habeas petitioner must present his or her claim to a state's highest court before petitioning for federal habeas relief, our more recent and more considered view has been to look to state law to see how the state defines and treats procedural missteps. *See Hogan v. McBride,* 74 F.3d 144, 146–47 (7th Cir.1996). In other words, a state court judgment pursuant to which a petitioner is in custody rests upon an independent and adequate state procedural ground only if the *state* views the procedural flaw as a forfeiture of further review. Given that Illinois prohibits claims like Gomez's on state post-conviction review, we must therefore determine *why* it does so. The distinction between a *res judicata* rationale and a procedural waiver rationale is important because federal review is precluded only by procedural forfeitures, not by *res judicata* concerns. *See Hogan,* 74 F.3d at 146. Had Gomez *never* raised his evidence sufficiency claim on direct appeal, the doctrine of waiver (and not *res judicata*) would clearly bar further state (and thus federal) review. *See Coleman,* 214 Ill.Dec. at 220, 660 N.E.2d at

927. Because Gomez raised the issue only to the Appellate Court, however, it is unclear whether it is waiver or *res judicata* that bars further state review.

■ The issue has an air of unreality about it because Illinois courts need not decide which rationale prohibits claims like Gomez's on post-conviction review. The distinction does not matter to Illinois courts because either *res judicata* or procedural waiver would be sufficient to dismiss a post-conviction review petition. The distinction, of course, does matter for federal courts. The closest Illinois case law we can find on the subject is a 1975 case stating that a petition for leave to appeal "is not necessarily an adversary proceeding to which the application of . . . the doctrine of waiver . . . is appropriate." *People v. Edgeworth,* 30 Ill. App.3d 289, 332 N.E.2d 716, 720 (1975). This understanding is consistent with the Illinois Supreme Court's discretionary review in which its denials of leave to appeal "carry no connotation of approval or disapproval of the appellate court action, and signify only that four members . . . for reasons satisfactory to them, have not voted to grant leave," *People v. Vance,* 76 Ill.2d 171, 28 Ill.Dec. 508, 513, 390 N.E.2d 867, 872 (1979). *Cf. Hogan,* 74 F.3d at 146 (discussing Indiana Supreme Court discretionary review). Furthermore, Illinois case law supports a *res judicata* rationale in Gomez's particular case because "issues regarding the sufficiency of the evidence are not proper in post-conviction proceedings," *People v. Franzen,* 251 Ill.App.3d 813, 190 Ill.Dec. 847, 856, 622 N.E.2d 877, 886 (1993); *see also People v. Moore,* 60 Ill.2d 379, 327 N.E.2d 324, 327 (1975). We therefore think it is safe to say that Gomez's failure to present his claim to the Illinois Supreme Court is not the obstacle to state post-conviction review. Gomez therefore has not procedurally defaulted his sufficiency of the evidence claim, and we move on to consider the merits of his petition.[4]

---

4. Even if Gomez did procedurally default his sufficiency of the evidence claim, we find in the alternative that the State waived its procedural default defense. In its June 16, 1994 answer to Gomez's habeas petition, the State indicated in a footnote that it did not yet have the records from

Gomez's petition to the Illinois Supreme Court and thus did not know what claims Gomez had previously raised. The footnote also stated that if the records showed that Gomez had not properly raised his sufficiency of the evidence claim, then the State asserted the procedural default

## B. Standard of Review

After oral argument, we asked the parties to submit supplemental briefs regarding the proper standard of review for this case. We asked them specifically to address the effect of the newly-amended § 2254(d) on the standard of review. The issue is relevant, of course, because we held in *Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996) (en banc), *cert. granted in part,* —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997), that the new § 2254(d) applies to all pending habeas petitions, even those filed before the AEDPA was enacted on April 24, 1996. *See id.* at 865–67; *see also Drinkard v. Johnson,* 97 F.3d 751, 766 (5th Cir.1996) (holding § 2254(d) applicable to pending habeas petitions). To understand the new statute's effect on habeas sufficiency of the evidence claims, a brief discussion is necessary of the legal background against which the statute was enacted.

In 1867, Congress granted federal courts expansive jurisdiction to grant writs of habeas corpus to prisoners held by state authorities in violation of the Constitution or the laws of the United States. *See Ex parte McCardle,* 73 U.S. (6 Wall.) 318, 325–26, 18 L.Ed. 816 (1867). Since then, Congress has generally left it within the federal courts' equitable discretion to determine the specific conditions that warrant habeas relief. *See Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 848–49, 9 L.Ed.2d 837 (1963); *Withrow v. Williams,* 507 U.S. 680, 715–18, 113 S.Ct. 1745, 1766–67, 123 L.Ed.2d 407 (1993) (Scalia,

J., concurring in part and dissenting in part); *cf.* 28 U.S.C. § 2243 ("The court shall ... dispose of the matter as law and justice require."). Habeas corpus doctrine has thus ebbed and flowed over the years as courts' understandings of what "law and justice require" have changed.

In 1979, the Supreme Court expanded the availability of the writ in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Nine years earlier, the Court had declared in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that the Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364, 90 S.Ct. at 1073. The *Winship* Court did not indicate, however, what effect its holding had on either direct appellate review or federal habeas corpus review of criminal convictions. The Court answered that question in *Jackson.* The Court explicitly held that a federal court may grant habeas relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324, 99 S.Ct. at 2791–92. Furthermore, the Court implicitly suggested that state appellate courts must apply at least the same constitutional standard when reviewing convictions for sufficiency of the evidence.[5] *Id.* at 316–22, 99 S.Ct. at 2787–91.

---

defense. For the next four and a half months, however, the State made no further mention of procedural default. The District Court's November 2, 1994 opinion ignored the procedural default defense and rejected Gomez's petition on the merits.

It is the State's obligation to assert a procedural default defense "in a manner reasonably calculated to alert the court." *Bloyer v. Peters,* 5 F.3d 1093, 1097 (7th Cir.1993). We do not think the State's conditional footnote met that standard. An overburdened federal court should not have to search through the footnotes of a pleading just to find a defense that is conditional on other facts that the State never even brings to the court's attention. Habeas corpus law is "a body of law of which the lawyers employed by a state attorney general should be masters." *Fagan v. Washington,* 942 F.2d 1155, 1157 (7th Cir.1991). Virtually any further notice to the District Court

would have been sufficient to alert the court of Gomez's procedural default. Absent that minimal effort, the defense is waived.

5. Although *Jackson's* specific holding is limited to federal habeas review, the Court's opinion indicates a similar duty for state appellate courts. The Court stated generally, for example, that a conviction in state court "cannot constitutionally stand" where no rational trier of fact could find guilt beyond a reasonable doubt. *Jackson,* 443 U.S. at 317–18, 99 S.Ct. at 2788–89. The Court also discussed the relevance of whether "a state appellate court invoked the *proper* standard," *id.* at 322 n. 15, 99 S.Ct. at 2790 n. 15 (emphasis added), obviously implying that there now is a proper standard. If nothing else, the Court passed upon the issue *sub silentio* when it did not deny Justice Stevens' discussion (in his separate opinion) of *Jackson's* implications for direct appellate review. *See id.* at 330–31, 334, 99 S.Ct.

*Jackson's* "no rational trier of fact" standard is undoubtedly deferential to the factfinder, but it accords no deference whatsoever to state appellate courts applying the "no rational trier of fact" standard. In other words, a federal district court reviewing a sufficiency of the evidence claim on habeas repeats the same constitutional exercise that a state appellate court must undertake. *Jackson* thus applied a *de novo* standard of review for habeas sufficiency of the evidence claims, as six justices of the Supreme Court explicitly recognized in a recent leading habeas case. *See Wright v. West*, 505 U.S. 277, 290, 112 S.Ct. 2482, 2489, 120 L.Ed.2d 225 (1992) (opinion of Thomas, J.); *id.* at 303, 112 S.Ct. at 2496–97 (O'Connor, J., concurring in judgment). Moreover, federal courts of appeals apply the same "no rational trier of fact" test when reviewing federal district court habeas decisions, *see, e.g.*, *Lemons v. O'Sullivan*, 54 F.3d 357, 364 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 528, 133 L.Ed.2d 434 (1995), thus providing a second federal *de novo* review of state appellate decisions.

The Court in *Wright*, however, considered whether it should, using its equitable discretion on habeas matters, pare back habeas review by shifting from *de novo* review to "deferential review for reasonableness" on mixed constitutional questions of law and fact such as *Jackson* claims. *See Wright*, 505 U.S. at 294, 112 S.Ct. at 2491 (opinion of Thomas, J.); *id.* at 305–06, 112 S.Ct. at 2497–98 (O'Connor, J., concurring in judgment). Indeed, the facts in *Wright* were quite analogous to the facts in this case. Like *Gomez*, the habeas petitioner in *Wright* challenged whether his admitted conduct was sufficient for a factfinder to infer that he was criminal-

ly guilty under state law. Despite the justices' extended exchanges on the appropriate standard of review for mixed constitutional questions, however, the Court was able to avoid the issue by holding that the evidence against the petitioner was sufficient even under *de novo* review. As Justice O'Connor put it, "In light of the case law and Congress' position [rejecting proposals for deferential review], a move away from *de novo* review of mixed questions of law and fact would be a substantial change in our construction of the authority conferred by the habeas corpus statute." *Id.* at 305–06, 112 S.Ct. at 2498 (O'Connor, J., concurring in judgment).

Although the Court in 1992 was hesitant to shift the standard of review, Congress in 1996 rushed in where the Court feared to tread. Congress passed and the President signed the AEDPA, which now statutorily prohibits federal courts from granting a writ of habeas corpus on a claim adjudicated on the merits in state court, unless that adjudication

(1) resulted in a decision that was contrary to, *or involved an unreasonable application of,* clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). Mixed constitutional questions of law and fact are exactly those decisions "which require the *application* of a legal standard to the historical-fact determinations." *Thompson v. Keohane*, —— U.S. ——, ——, 116 S.Ct. 457, 464, 133 L.Ed.2d 383 (1995) (em-

---

at 2794–96, 2797 (Stevens, J., concurring in judgment). Indeed, Justice Stevens was sharply critical of the Court's expansion of habeas, arguing that *Winship* had "nothing to do with appellate, much less habeas corpus, review standards." *Id.* at 330, 99 S.Ct. at 2795.

Since the *Jackson* decision, other courts have seen its obvious relevance for state proceedings. *See, e.g.*, *White v. Estelle*, 459 U.S. 1118, 1125, 103 S.Ct. 757, 761, 74 L.Ed.2d 973 (1983) (Marshall, J., dissenting from denial of certiorari) ("Both the state courts and the federal courts must conduct the same inquiry as to sufficiency."); *Holloway v. McElroy*, 632 F.2d 605, 637 n.

51 (5th Cir.1980). State courts have generally either adopted the *Jackson* standard or interpreted their own sufficiency standards as consistent with *Jackson's* requirements. *See* Irene Merker Rosenberg & Yale L. Rosenberg, *"Perhaps What Ye Say Is Based Only On Conjecture"—Circumstantial Evidence, Then And Now*, 31 Hous. L.Rev. 1371, 1417–19 (1995) (collecting cases). Indeed, *Jackson's* "no rational trier of fact" standard has seemingly become the universal sufficiency of the evidence appellate standard, applied even by federal courts hearing appeals of federal convictions. *See, e.g.*, *United States v. Brigham*, 977 F.2d 317, 319 (7th Cir.1992).

phasis added) (quoting *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963)). This court and the Fifth Circuit therefore have both held that the new § 2254(d)(1) requires only deferential review for reasonableness on mixed questions in habeas proceedings. *Lindh,* 96 F.3d at 870–71, 877; *Drinkard,* 97 F.3d at 768–69.

■ Because *Jackson* claims are mixed questions of law and fact, we are compelled to hold that a writ of habeas corpus may be issued for evidence insufficiency only if the state courts have unreasonably applied the *Jackson* standard. Federal review of these claims therefore now turns on whether the state court provided fair process and engaged in reasoned, good-faith decisionmaking when applying *Jackson's* "no rational trier of fact" test.[6] As we stated in *Lindh,* § 2254(d)(1) "requires federal courts to take into account the care with which the state court considered the subject.... [A] responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment." 96 F.3d at 871.

Gomez asserts in his supplemental brief that § 2254(d)(1) "cannot plausibly be read to render the standard of review in *Jackson v. Virginia* cases any more deferential than it already is."[7] We cannot agree. The Supreme Court framed the issue in *Wright* when it floated the idea that *Jackson* claims and other mixed constitutional questions involving the application of legal standards should be given only deferential review for reasonableness. When Congress four years later restricts the habeas remedy to cases involving the "unreasonable application" of federal law, its action must be interpreted in light of the meaning the Supreme Court attached to those words. As the Court itself has stated:

> A cardinal rule of statutory construction holds that: "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them."

*Molzof v. United States,* 502 U.S. 301, 307, 112 S.Ct. 711, 716, 116 L.Ed.2d 731 (1992) (quoting *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952)).

---

**6.** Although § 2254(d) mandates that federal courts give deference to state court applications of *Jackson,* the new provision says nothing about the deference federal appellate courts must give to federal district court decisions on *Jackson* claims in habeas proceedings. Without any statutory command to change our practice, we will continue to review these district court final orders *de novo.*

**7.** Gomez thus rightly acknowledges that § 2254(d)(1) is the relevant statute, not subsection (d)(2) which deals with pure factual determinations. Any argument that *Jackson* claims should be viewed as factual determinations is foreclosed 1) by *Jackson's* failure to mention as relevant the statutory presumption that state court factual determinations are presumed correct in habeas proceedings, *see* 28 U.S.C. § 2254(d) (1966); 2) by *Jackson's* mandate that federal habeas courts are "to assess the historic facts," *see Jackson,* 443 U.S. at 318, 99 S.Ct. at 2788, rather than find or determine them; and 3) by the *Wright* Court's express consideration of *Jackson* claims as mixed constitutional questions.

Nonetheless, the statutory presumption of correctness for factual determinations remains relevant to *Jackson* claims. *See* 28 U.S.C. § 2254(d)(2), (e)(1). These statutory provisions control when a federal court may disregard state court determinations of "basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators....'" *Thompson,* —— U.S. at ——, 116 S.Ct. at 464 (quoting *Townsend,* 372 U.S. at 309 n. 6, 83 S.Ct. at 755 n. 6, quoting in turn *Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.)). These provisions come into play in *Jackson* claims when habeas petitioners contest as incomplete or inaccurate particular determinations on subsidiary factual matters, which are often capable of direct proof in court. *See, e.g., Williams v. Duckworth,* 738 F.2d 828, 829 n. 2 (7th Cir. 1984); *United States ex rel. Green v. Greer,* 667 F.2d 585, 587–88 (7th Cir.1981). A state court's ultimate conclusion on an evidence insufficiency claim—reached after conducting *Jackson's* constitutional analysis which itself requires the application of state law to the facts—can scarcely be labeled a determination of basic, primary, or historical fact.

Moreover, if the federal courts continue to apply *Jackson's* "no rational trier of fact" test directly to the facts, state appellate decisions will continue to receive no deference, and the AEDPA will have had zero effect on this contentious area of habeas corpus law. Like the Fifth Circuit, we find ironic any suggestion that "after all the years of failed attempts by Congress to adopt a deferential standard of review in this area the passage of subsection (d)(1) represents no more than the codification of existing Supreme Court precedent." *Drinkard*, 97 F.3d at 767 n. 21 (citations omitted). Congress, in short, does not want federal courts duplicating the review of state court systems. So unless state courts are now under a hitherto unknown duty to apply a standard higher than *Jackson's*, continued *de novo* application of the *Jackson* standard by federal courts would vitiate the deference Congress has mandated.

The idea that Congress might want to make habeas review in *Jackson* cases more deferential is hardly an absurd or unprecedented notion. Justice Stevens, joined by two justices in his *Jackson* concurrence, argued that neither the record in that case nor general experience with sufficiency of the evidence cases "supports, much less compels, the conclusion that there is *any* need for this new constitutional precept." *Jackson*, 443 U.S. at 327, 99 S.Ct. at 2793 (Stevens, J., concurring in judgment). Justice Stevens even argued that *Jackson* habeas review "threatens serious harm to the quality of our judicial system." *Id.* Over the intervening years, we too have questioned the necessity of *federal* protection for the innocent in state courts. *See Nichols v. Gagnon*, 710 F.2d 1267, 1271 (7th Cir.1983) (*"Jackson* goes far ... toward making the federal habeas corpus court just a second appeals court, performing no distinctively federal function."). And we have noted the extreme difficulty—encountered in *Jackson* cases—of distinguishing between evidentiary insufficiency (which justifies habeas relief) and mistaken understanding of a state law's substantive requirements (which does not). *See Evans v. McBride*, 94 F.3d 1062, 1064 (7th Cir. 1996); *Bates v. McCaughtry*, 934 F.2d 99, 102–03 (7th Cir.1991); *cf.* Deborah A. Jones, Comment, *Federal Review of the Evidence*

*Supporting State Convictions*, 79 Colum. L.Rev. 1577 (1979). Indeed, Congress' statutory change in this area of the law seems entirely consistent with the traditional assumption that we can trust state courts to "give serious attention to their responsibilities for enforcing the commands of the Constitution," *Sawyer v. Smith*, 497 U.S. 227, 241, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990).

### C. Review for Reasonableness

■ Under Illinois accountability theory, a conviction for unlawful delivery requires the State to prove that: 1) the defendant solicited, ordered, abetted, agreed, or attempted to aid another in the planning or commission of the delivery; 2) the defendant's participation took place before or during the commission of the delivery, and 3) the defendant had the concurrent, specific intent to promote or facilitate the commission of the offense. *People v. Roppo*, 234 Ill.App.3d 116, 174 Ill.Dec. 890, 897, 599 N.E.2d 974, 981 (1992); *see* 720 Ill. Comp. Stat. 5/5–2. "[M]ere presence at the crime scene and knowledge of an on-going offense" is not sufficient for a conviction, but a factfinder may infer accountability from a defendant's "approving presence at the scene of the crime" and "from evidence of conduct showing a design on defendant's part to aid in the offense." *Roppo*, 174 Ill.Dec. at 897, 599 N.E.2d at 981.

■ The Appellate Court of Illinois ruled unanimously that the evidence was sufficient to convict Gomez beyond a reasonable doubt. The court carefully stated the requirements for conviction under Illinois accountability theory, and the court employed the proper *Jackson* standard in its analysis. The court also showed a familiarity with the trial evidence both in the court's analysis of Gomez's hearsay evidence claim (not on review here) and in its consideration of Gomez's evidence insufficiency claim. After our review of the facts and of the Appellate Court's decision-making process, we cannot say the state judges acted as unreasonable jurists in their application of the *Jackson* standard. "The Appellate Court of Illinois correctly cited the factors [that are] relevant and, in applying

these factors, the court carefully relied on evidence in the record to support its determination...." *Abrams v. Barnett,* 100 F.3d 485, 493 (7th Cir.1996). Because the court's application of the *Jackson* standard was within the bounds of reasonableness, it "must be respected—not because it is right, or because federal courts must abandon their independent decisionmaking, but because the grave remedy of upsetting a judgment entered by another judicial system after full litigation is reserved for grave occasions. That is the principal change effected by § 2254(d)(1)." *Lindh,* 96 F.3d at 871.

The District Court's order denying the writ of habeas corpus is AFFIRMED.