**Reggie Cornelius WELCH, Petitioner,**

v.

**Luella BURKE, Respondent.**

No. 97–CV–10319–BC.

United States District Court,
E.D. Michigan,
Northern Division.

April 26, 1999.

Reggie Cornelius Welch, plaintiff pro se.

Laura Moody, Assistant Attorney General, Lansing, MI, for defendants.

## MEMORANDUM OPINION
## AND ORDER

CLELAND, District Judge.

### I. Introduction

Before the court is Reggie Cornelius Welch's *pro se* habeas corpus petition under 28 U.S.C. § 2254. Petitioner is a state inmate currently confined at the Saginaw Correctional Facility in Freeland, Michigan where respondent Luella Burke is the warden.

On November 10, 1993, a circuit court jury in Saginaw County, Michigan found petitioner guilty of second-degree murder, M.C.L.A. § 750.317; M.S.A. § 28.549, possession of a firearm during the commission of a felony, M.C.L.A. § 750.227b; M.S.A. § 28.424(2); and possession of a short-barreled shotgun, M.C.L.A. § 750.224b; M.S.A. § 28421(1).[1] The trial court sentenced petitioner to life in prison for the murder conviction and to a consecutive two-year sentence for the felony firearm conviction. The trial court sentenced petitioner to three to five years in prison for possessing a short-barreled shotgun. This term was expected to run concurrently with petitioner's life sentence.

Petitioner raised the pending habeas claims in an appeal of right. The Michigan Court of Appeals affirmed his conviction and sentence, and the Michigan Supreme Court denied leave to appeal. *See People v. Welch,* No. 172980 (Mich.Ct.App. June 28, 1996); *People v. Welch,* 454 Mich. 885, 562 N.W.2d 204 (1997).

On September 17, 1997, petitioner filed the pending habeas petition, alleging the following grounds for relief:

I. DEFENDANT'S SECOND DEGREE MURDER CONVICTION MUST BE REVERSED WHERE THE PROSECUTION FAILED TO ESTABLISH THE

---

1. The facts leading to petitioner's convictions have been summarized by the Michigan Court of Appeals as follows:

> Defendant, aged nineteen, shot and killed his seventeen-year-old girlfriend, Damarius Cooper, on Sunday morning, April 18, 1993. Defendant and Damarius had been dating for an extended period and had a son named Reggie, Jr. However, Dwayne Jackson testified that, by mid-April, 1993, *Dwayne* had been dating Damarius for a couple of months. Trouble started when defendant found out about Dwayne.
>
> The Friday night before the murder, defendant and several of his friends, including Anthony Hunt, visited Damarius' neighbor's home. Damarius and Dwayne were both there, and defendant grabbed Damarius, took her outside and questioned her about her relationship with Dwayne. Initially, Damarius insisted that Dwayne was there with another female. After defendant checked with the other female, who denied involvement with Dwayne, defendant again grabbed Damarius and pulled her outside. He admitted slapping her with his hands, grabbing her and shaking her, and hitting her for two or three minutes after she fell. He stopped hitting her when the neighbor left to call the police. The neighbor testified that she heard defendant threaten to kill Damarius.
>
> On Saturday, Damarius stayed home with her mother until the evening, when she went to meet defendant, along with several mutual friends, at Anthony's mother's home. According to defendant, he and Damarius watched television, laughed, played and had sex that evening.
>
> Sunday morning, Anthony's mother arose at 8:15 and found defendant and Damarius lying side by side, asleep on the floor in her home, before she left. Shortly thereafter, Anthony, defendant and Damarius woke up, and defendant began to ask Damarius questions about Friday night, and about her relationship with Dwayne. When Damarius was evasive, defendant said that if she did not tell the truth, he was going to get the gun and stick it in her mouth. Defendant then retrieved a gun from Anthony's room, and pointed it at Damarius' lower body. Anthony testified that defendant then tripped Damarius, causing her to fall face first onto the floor. Defendant then positioned himself behind her, looked over at Anthony, smiled, and shot her. (Damarius died from a shotgun wound to the back of her head, fired from about nine to twelve inches away.). Defendant became hysterical, and called 911. Defendant asked Anthony to lie for him, and defendant initially lied to the police, claiming that a 'man in black' shot Damarius. Defendant told police and claimed at trial that he did not know that the gun was loaded.

*People v. Welch,* No. 172980 (Mich.Ct.App. June 28, 1996) at 1–2.

NECESSARY INTENT ELEMENT BEYOND A REASONABLE DOUBT.

II. THE TRIAL JUDGE ABUSED HIS DISCRETION IN ADMITTING A PHOTOGRAPH OF THE VICTIM ON THE AUTOPSY SLAB.

III. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF PRIOR BAD ACTS OF THE DEFENDANT.

IV. THE TRIAL COURT ERRED IN PROHIBITING A DEFENSE WITNESS FROM TESTIFYING TO STATEMENTS OF THE DEFENDANT REGARDING HIS FEELINGS ABOUT THE CONFRONTATION BETWEEN HIM AND HIS GIRLFRIEND.

V. DEFENDANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL AS A RESULT OF THE PROSECUTOR'S MISCONDUCT.

A. THE PROSECUTOR IMPROPERLY QUESTIONED A NON–ALIBI DEFENSE WITNESS ON HIS FAILURE TO COME FORWARD WITH EVIDENCE PRIOR TO TRIAL.

B. THE PROSECUTOR IMPROPERLY COMMENTED ON THE CREDIBILITY OF BOTH THE DEFENDANT AND A DEFENSE WITNESS.

C. THE PROSECUTOR IMPROPERLY AND REPEATEDLY QUESTIONED DEFENDANT AS TO HIS OPINION OF THE CREDIBILITY OF THE CIVILIAN WITNESSES.

D. THE PROSECUTOR IMPROPERLY ATTEMPTED TO EVOKE AN EMOTIONAL RESPONSE FROM THE JURY.

VI. DEFENDANT IS ENTITLED TO RESENTENCING WHERE THE TRIAL JUDGE CONSIDERED INACCURATE INFORMATION IN IMPOSING SENTENCE.

A. THE JUDGE'S SENTENCE WAS BASED UPON AN INACCURATE STATEMENT AND UNDERSTANDING OF THE LAW.

B. THE JUDGE INAPPROPRIATELY CONSIDERED HIS OWN PERSONAL EXPERIENCES IN IMPOSING SENTENCE ON MR. WELCH.

C. DEFENDANT MUST BE RESENTENCED BY A DIFFERENT JUDGE.

VII. DEFENDANT IS ENTITLED TO RESENTENCING BECAUSE THE SENTENCE IS DISPROPORTIONATE, AND THE UPWARD DEPARTURE, WHICH RESULTED IN A LIFE SENTENCE, WAS AN ABUSE OF DISCRETION.

VIII. DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

Because petitioner did not attach a supporting brief to his petition, the court will construe petitioner's arguments to read the way they were presented in his state court brief.

Respondent, who has answered the habeas petition through counsel, argues that:

I. PETITIONER'S SUFFICIENCY OF THE EVIDENCE ARGUMENT IS MERITLESS BECAUSE THE MICHIGAN COURT OF APPEALS' DECISION THAT A RATIONAL TRIER OF FACT COULD HAVE FOUND PETITIONER GUILTY BEYOND A REASONABLE DOUBT WAS NOT UNREASONABLE.

II. PETITIONER'S HABEAS CLAIMS II, II, AND IV ARE NONCOGNIZABLE STATE LAW CLAIMS AND/OR ARE PROCEDURALLY DEFAULTED AND THUS HE IS NOT ENTITLED TO HABEAS RELIEF.

III. PETITIONER'S HABEAS CLAIMS V AND VI ARE PROCEDURALLY DEFAULTED AND/OR ARE MERITLESS

IV. PETITIONER'S SENTENCING CLAIMS ARE MERITLESS AND/OR NONCOGNIZABLE STATE LAW CLAIMS AND DO NOT WARRANT HABEAS RELIEF.

V. PETITIONER'S CLAIM THAT HIS COUNSEL WAS INEFFECTIVE BECAUSE HE FAILED TO OBJECT TO ERRORS MADE BY THE TRIAL JUDGE IS MERITLESS.

## II. Discussion

### A. Exhaustion of State Remedies

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "the Act"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), govern this case because petitioner filed his habeas petition after the effective date of the Act. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997); *Warren v. Smith,* 161 F.3d 358, 360 (6th Cir.1998). The AEDPA preserves the traditional exhaustion requirement, which mandates dismissal of a habeas petition containing claims that the petitioner has a right to raise in state court, but failed to do so. *Gaylor v. Harrelson,* 962 F.Supp. 1498, 1499 (N.D. Ga.1997) (citing 28 U.S.C. § 2254(b)(1)(A) and (c)).

■■■ "A petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik,* 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907, 113 S.Ct. 3001, 125 L.Ed.2d 694 (1993). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Dombkowski v. Johnson,* 488 F.2d 68, 70 (6th Cir.1973); *Winegar v. Corrections Department,* 435

F.Supp. 285, 289 (W.D.Mich.1977), *aff'd,* 582 F.2d 1281 (6th Cir.1978) (table).

■ Petitioner raised all his habeas claims in the Michigan Court of Appeals and in the Michigan Supreme Court. Although he arguably raised his first, second, fifth, sixth, and eighth claims in state court as federal constitutional issues, he raised his third, fourth, and seventh claims solely as state law issues. Because petitioner failed to raise all his habeas claims as federal constitutional issues in state court, the petition is subject to dismissal as a mixed petition of exhausted claims and unexhausted claims. *See Rose v. Lundy,* 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982).

■ Petitioner's unexhausted claims are not cognizable here or they lack merit. Therefore, in the interests of efficiency and justice, the court will proceed to address petitioner's claims rather than dismiss the petition on exhaustion grounds. *See* 28 U.S.C. § 2254(b)(2); *Norris v. Schotten,* 146 F.3d 314, 333 (6th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 348, 142 L.Ed.2d 287 (1998); *Cain v. Redman,* 947 F.2d 817, 820 (6th Cir.1991), *cert. denied,* 503 U.S. 922, 112 S.Ct. 1299, 117 L.Ed.2d 521, (1992); *Hafley v. Sowders,* 902 F.2d 480, 482 (6th Cir.1990).

### B. Standard of Review

Among other things, the AEDPA altered the standard of review that federal courts must consider when deciding whether to grant habeas corpus petitions brought under 28 U.S.C. § 2254. *Felker v. Turpin,* 518 U.S. 651, 654, 116 S.Ct. 2333, 2335, 135 L.Ed.2d 827 (1996); *Harpster v. State of Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). The new standard of review reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As explained by the United States Court of Appeals for the Sixth Circuit,

[t]he AEDPA requires heightened respect for state court factual and legal determinations. . . .

Before a writ may issue under the AEDPA, the federal court must find that the state court's adjudication of the claim was 'contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court.' 28 U.S.C. § 2254(d)(1).

. . . .

Under the AEDPA, the district court could find the state court determinations unreasonable 'only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect. In other words, [a federal court] can grant habeas relief only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists.' *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).

*Herbert v. Billy*, 160 F.3d 1131, 1134–35 (6th Cir.) (footnote omitted). With these principles in mind, the court will proceed to adjudicate petitioner's claims.

### C. Claim I—Insufficiency of the Evidence

■ Petitioner's first claim is that the evidence presented at trial was insufficient to convict him of second-degree murder.

More particularly, petitioner contends that the prosecution failed to establish intent to kill, a necessary element of second-degree murder. Petitioner alleges that there was ample evidence to show that he lacked malice or the intent to kill when the crime occurred.

The Supreme Court has held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). A habeas petitioner is entitled to relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979).

The Michigan Court of Appeals adjudicated petitioner's claim as follows:

Defendant asserts that his second-degree murder conviction should be reversed where the prosecution failed to establish the necessary intent element. A death caused by the defendant with malice and without justification or excuse is second-degree murder. *People v. Neal*, 201 Mich.App. 650, 654, 506 N.W.2d 618 (1993). Malice is the intent to kill, the intent to do great bodily harm, or the wanton and wilful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm. *People v. Goecke*, 215 Mich.App. 623, 629, 547 N.W.2d 338 (1996). One acts with malice if one entertains one of three possible intents: the intent to kill, the intent to inflict great bodily harm, or the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *Id.* Malice can be inferred from the facts and circumstances of the killing. *People v. Harris*, 190 Mich.App. 652, 659, 476 N.W.2d 767 (1991).

Defendant contends that the testimony about events following Friday evening, and prior to the Sunday morning killing, shows that he and Damarius had reconciled, and that he did not know that the shotgun was loaded when he pulled the trigger with the gun pointed at the back of her head. Although there is testimony from witnesses other than defendant to support this, a reasonable trier of fact could have found otherwise. Here, defendant admitted that, two days before the murder, he had found Damarius with another man, and had slapped her in the face, shook her violently and beat her with punches to her body for two or three minutes. Anthony and another witness testified that defendant threatened at that time to kill Damarius. On Sunday morning, when defendant brought up the subject of Friday night, defendant threatened that if she did not tell the truth he was going to get the gun, and stick it in her mouth. He then retrieved the gun, tripped her, cocked the gun and shot her. Defendant did not deny that he pulled the trigger with the gun pointed at the back of Damarius' neck, and he could not give an explanation for why he had retrieved the shotgun in the first place. A police forensic scientist testified that someone firing that shotgun would have been able to see the shell in the chamber before firing. When the police arrived, defendant lied about who had shot Damarius, and defendant later told his mother that he had shot Damarius only after she grabbed the barrel of the shotgun. This was adequate evidence from which a reasonable trier of fact could find beyond a reasonable doubt that, when defendant pulled the trigger, he did so with malice; that is, intent to kill, or intent to do great bodily harm, or intent to create a high risk of death or bodily harm, with knowledge that such is the probable result. *Neal,* 201 Mich.App. at 654, 506 N.W.2d 618.

*People v. Welch,* No. 172980 at 2–3.

Although the Michigan Court of Appeals did not refer to *Jackson,* it applied the same "no rational trier of fact" standard. Moreover, "the new § 2254(d) of Title 28 (as amended by the [AEDPA]) mandates that federal courts give deferential review to state court decisions on sufficiency of the evidence claims." *Gomez v. Acevedo,* 106 F.3d 192, 193–94 (7th Cir.), *vacated on other grounds,* — U.S. —, 118 S.Ct. 37, 139 L.Ed.2d 6 (1997).[2]

The Michigan Court of Appeals accurately summarized the facts in this case, and it made a reasoned, good-faith decision when applying the "no rational trier of fact" standard. *See Gomez,* 106 F.3d at 199. The state court's decision was neither contrary to, nor an unreasonable application of, the proper standard. Accordingly, petitioner's first claim does not entitle him to habeas relief. *See* 28 U.S.C. § 2254(d).

### D. Claim II—Abuse of Discretion in Admitting Photograph

Petitioner's second claim is that the trial court abused its discretion in admitting a photograph of Damarius Cooper's body on the autopsy slab. Petitioner alleges that

---

**2.** The Seventh Circuit went on to say that:

if the federal courts continue to apply Jackson's 'no rational trier of fact' test directly to the facts, state appellate decisions will continue to receive no deference, and the AEDPA will have had zero effect on this contentious area of habeas corpus law. Like the Fifth Circuit, we find ironic any suggestion that 'after all the years of failed attempts by Congress to adopt a deferential standard of review in this area the passage of subsection (d)(1) represents no more than the codification of existing Supreme Court precedent.' *Drinkard,* 97 F.3d at 767

n. 21 (citations omitted). Congress, in short, does not want federal courts duplicating the review of state court systems. So unless state courts are now under a hitherto unknown duty to apply a standard higher than Jackson's, continued de novo application of the Jackson standard by federal courts would vitiate the deference Congress has mandated.

*Gomez,* 106 F.3d at 200. *Cf. Warren,* 161 F.3d at 360–62 (analyzing a sufficiency-of-the-evidence claim much like federal courts did before the AEDPA was enacted).

the gruesome photograph undoubtedly aroused the passion of the jurors, causing them to reach a prejudicial verdict.

■ Respondent contends that petitioner did not raise his second claim as a federal constitutional issue in state court. The court notes, however, that petitioner argued in state court that the trial court's error denied him a fair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Thus, petitioner's claim arguably was exhausted as a federal constitutional claim.

■ Nevertheless, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir.), *cert. denied*, 513 U.S. 1061, 115 S.Ct. 674, 130 L.Ed.2d 607 (1994). The prosecutor in this case argued that the disputed photograph was necessary to show the nature and location of the deceased victim's fatal wound. *See* TT II at 124.[3] Witnesses, however, had described both the location of the gunshot wound and the extent of the injury. Petitioner, in fact, admitted that he pointed the gun at the back of the deceased victim's head after she fell and then pulled the trigger. *See* TT III at 110–12.

The trial court, nevertheless, determined that the photograph was admissible to show the extent of the injuries and to corroborate the witnesses' testimony. *See* TT II at 125. The Michigan Court of Appeals subsequently noted that photographs may be admissible even if they portray a gruesome crime and tend to arouse the passion or prejudice of the jurors. The Court of Appeals determined that the trial court did not abuse its discretion in admitting the autopsy photograph because the photograph was instructive on a material point, the issue of intent. The state court's responsible, thoughtful deci-

sion about the use of discretion must be honored. *Lindh v. Murphy*, 96 F.3d 856, 871 (7th Cir.1996), *reversed on other grounds*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Moreover, the prosecutor warned the prospective jurors during *voir dire* that one exhibit would be a photograph of the autopsy. The prospective jurors who expressed a concern about viewing the photograph were excused from the jury panel. *See* TT I at 46–49 & 52.

The court concludes that admitting the autopsy photograph into evidence did not rise to the level of depriving petitioner of a fundamentally unfair trial. Accordingly, petitioner's second claim does not warrant habeas relief.

### E. Claim III—Admission of Evidence of Prior "Bad Acts"

Petitioner's third claim is that the trial court erred in admitting evidence of petitioner's conduct toward Damarius Cooper on April 16, 1993, the Friday before Damarius' death. Petitioner contends that evidence of his prior acts was irrelevant and unfairly prejudicial.

■ Petitioner raised this claim solely as an issue of state law in state court, and he has not alleged a violation of the federal constitution in his habeas petition. "Yet one well established rule, not altered by the [AEDPA], is that '[a] federal court may not issue the writ on the basis of a perceived error of state law.'" *Lindh*, 96 F.3d at 875 (quoting *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984)); *see Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir.) (concluding that violation of a state law is not cognizable in federal habeas corpus proceedings), *cert. denied*, — U.S. —, 119 S.Ct. 557, 142 L.Ed.2d 464 (1998). Accordingly, petitioner's state law claim concerning evidence of prior bad acts is not cognizable on habeas

---

**3.** "TT" refers to the four-volume transcript of trial, which the court has labeled as follows: "TT I" (November 4, 1993); "TT II" (November ber 5, 1993); "TT III" (November 9, 1993); and "TT IV" (November 10, 1993).

review. *See Floyd,* 148 F.3d at 619; *see also* 28 U.S.C. § 2254(a).

■ Even if petitioner had raised his third claim as a federal constitutional issue, he would have to show that the alleged evidentiary error so perniciously affected the prosecution of his case that it deprived him of the fundamental right to a fair trial. *Kelly,* 25 F.3d at 370. Evidence that petitioner struck Damarius on April 16, 1993, and threatened to kill her that night was related to the material issue of whether petitioner intended to kill Damarius.

Additionally, petitioner had an opportunity to offer his perspective on the incident when he testified at trial. He testified that, following the incident, he had told his friends that he could not believe what he had done and that he did not want to lose Damarius. He denied the allegation that he had threatened to kill Damarius. *See* TT III at 79–80.

The trial court subsequently instructed the jurors that, if they believed the evidence, they could consider only whether the evidence of petitioner's improper acts demonstrated that petitioner meant to kill Damarius. The trial court also instructed the jurors not to consider the evidence for other purposes, such as whether it demonstrated that petitioner was a bad person or was likely to commit crimes. *See id.* at 167–68. The Michigan Court of Appeals determined that the trial court did not abuse its discretion by admitting the evidence.

This court concludes that petitioner was not deprived of his fundamental right to a fair trial when the trial court permitted witnesses to testify about petitioner's alleged prior bad acts. Petitioner therefore has no right to habeas relief on the basis of his third claim.

### F. Claim IV—Prohibiting Testimony about Petitioner's Feelings

Petitioner's fourth claim is that the trial court erred in prohibiting a defense witness, Clois Bell, from testifying about petitioner's feelings after the Friday night assault on Damarius. Petitioner argues that

it was necessary to admit testimony about his feelings regarding the Friday night incident to rebut the prosecutor's argument that the beating was indicative of his intent to kill Damarius on the following Sunday.

Petitioner raised his fourth claim solely as an issue of state law in state court and in his habeas petition. Accordingly, petitioner's fourth claim is not cognizable here. *See* 28 U.S.C. § 2254(a); *Lindh,* 96 F.3d at 875; *Floyd,* 148 F.3d at 619.

■ Additionally, the Michigan Court of Appeals determined that petitioner had defaulted his claim by asserting a basis for his claim that was different from the one used to object at trial. Petitioner has not alleged cause for his procedural error and resulting prejudice or a miscarriage of justice. For this additional reason, petitioner's fourth claim is barred from review. *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

■ Moreover, as explained above, petitioner himself testified about his reaction to the assault on Damarius on April 16, 1993. Thus, he was given an opportunity to present the information that he apparently wanted Clois Bell to provide. Furthermore, other witnesses suggested by their testimony that petitioner and Damarius reconciled their differences after the assault. *See* TT II at 77 & 86–87. The court concludes that the trial court's alleged evidentiary error did not "so perniciously affect the prosecution . . . as to deny [petitioner] the fundamental right to a fair trial." *Kelly,* 25 F.3d at 370. Petitioner's fourth claim does not warrant habeas relief.

### G. Claim V—Prosecutorial Misconduct

Petitioner's fifth claim is that he was denied his rights to due process and a fair trial by the prosecutor's misconduct. Petitioner contends that the prosecutor improperly (1) questioned Clois Bell, a non-alibi defense witness, about his failure to

come forward with evidence before trial; (2) commented on petitioner's and Clois Bell's credibility; (3) questioned petitioner about the credibility of the prosecution's witnesses; and (4) attempted to evoke an emotional response from the jury. Respondent contends that petitioner's claims are barred by his state procedural default of failing to object at trial to the prosecutor's conduct.

### 1. The Doctrine of Procedural Default

 A procedural default in the habeas context is "a critical failure to comply with state procedural law...." *Trest v. Cain*, 522 U.S. 87, ——, 118 S.Ct. 478, 480, 139 L.Ed.2d 444 (1997).[4] The doctrine of procedural default provides that:

[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750, 111 S.Ct. 2546; *see Coe v. Bell*, 161 F.3d 320, 330 (6th Cir.1998) (citation omitted). When determining whether a state court's judgment rested on an independent and adequate state procedural rule, a federal court must "look through" unexplained orders to the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991); *Couch v. Jabe*, 951 F.2d 94 (6th Cir.1991).

### 2. The Last Reasoned Decision

 The Michigan Court of Appeals was the last state court to render a reasoned decision on petitioner's claims of prosecutorial misconduct. The Court of Appeals noted that petitioner had failed to object to any of his prosecutorial miscon-

duct claims. The Court of Appeals then stated that

[a]ppellate review of improper prosecutorial remarks is generally precluded absent objection by counsel because the trial court is thereby deprived of an opportunity to cure the error. *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *cert. denied sub nom Michigan v. Caruso*, 513 U.S. 1121, 115 S.Ct. 923, 130 L.Ed.2d 802 (1995). An exception exists if a curative instruction could not have eliminated the prejudicial effect or where failure to consider the issue would result in a miscarriage of justice. *Id.*

*People v. Welch*, No. 172980 at 4–5. The Court of Appeals went on to address each of petitioner's claims of prosecutorial misconduct. The Court of Appeals concluded that the prosecutor's conduct either was not improper or that no miscarriage of justice occurred.

The state court's decision was a "clear and express" indication that its judgment rested on a state procedural bar. *See Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (holding that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case " 'clearly and expressly' " " states that its judgment rests on a state procedural bar") (citation omitted); *see also Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (generally demonstrating that failure to comply with a state's contemporaneous objection rule is an adequate state ground for denying relief). Additionally, the state court's alternative analysis under a miscarriage-of-justice standard does not preclude this court from concluding that petitioner's claim is procedurally defaulted. *See Harris v. Reed*, 489 U.S. at 264 n. 10, 109 S.Ct. 1038; *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th

---

4. The substantive changes made by the AEDPA did not change the procedural default rules. *Moleterno v. Nelson*, 114 F.3d 629, 633–34 (7th Cir.1997); *Breard v. Netherland*, 949 F.Supp. 1255, 1262–63 (E.D.Va.1996), *aff'd*, 134 F.3d 615 (4th Cir.), *cert. denied sub nom Breard v. Greene*, 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998).

Cir.1989). Furthermore, the Michigan Supreme Court did not set aside the procedural bar and consider petitioner's defaulted claims on the merits. *See Ylst v. Nunnemaker,* 501 U.S. at 803, 111 S.Ct. 2590. Petitioner's state procedural default therefore bars habeas review of his fifth claim unless he can show cause for his error and prejudice resulting from the alleged violation of federal law or a miscarriage of justice.

### 3. Cause and Prejudice

Petitioner's eighth claim is that his trial attorney rendered ineffective assistance of counsel by not objecting to the prosecutor's conduct. The court therefore construes the habeas petition and state court brief to allege ineffective assistance of trial counsel as cause for petitioner's procedural default. Petitioner also alleges that he was prejudiced by his attorney's conduct, and he argues that he would have had a reasonably likely chance of acquittal if his attorney had objected to the prosecutor's conduct.

■■■ Ineffective assistance of counsel is cause for a procedural default. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). However, to establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

■■■ Perhaps a more prudent attorney would have objected to the prosecutor's conduct. Nevertheless, even if the court assumed that counsel's performance was deficient, petitioner must show that counsel's performance prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable." *Id.* For the following reasons the court concludes that defense counsel's failure to object did not prejudice the defense to the extent that it deprived petitioner of a fair trial.

### a. Asking Clois Bell about his Failure to Come Forward

■■■ Petitioner contends that the prosecutor improperly questioned Clois Bell, a non-alibi defense witness, about his failure to come forward with certain evidence before trial.[5] Specifically, the prosecutor asked Clois Bell at what point he had informed the police about seeing the shotgun that was used to kill Damarius. Clois responded that he did not speak with the police because he had heard rumors about what happened, but he did not know what was true and what was not true. *See* TT III at 162–63. In his closing argument, the prosecutor mentioned Clois Bell's failure to inform the police about the incident with the gun. *See id.* at 147.

The Michigan Court of Appeals implicitly concluded that, because it seemed unreasonable for Clois Bell not to come forward, the prosecutor properly impeached Clois. Additionally petitioner's allegation of prosecutorial misconduct rests solely on state court decisions which prohibit a prosecutor from commenting on the failure of a non-alibi witness to come forward with information. Petitioner has not alleged that the prosecutor's attempt to impeach Clois Bell violated federal constitutional law. Accordingly, the prosecutor's questions and argument did not prejudice the defense.

### b. Comments on Witness Credibility

■■■ Petitioner alleges next that the prosecutor improperly questioned petitioner's credibility when addressing the jury.[6]

---

**5.** Clois Bell testified that he was with petitioner, Anthony Hunt, and one Antoine at Anthony's house on Friday night, April 16, 1993. Clois also testified that: (1) Anthony and Antoine had picked up the shotgun and that Anthony had racked the gun; (2) somebody had said that the gun was not loaded; (3) petitioner did not touch the gun that night;

and (4) he (Clois) had not heard petitioner threaten to kill Damarius. *See* TT III at 51–59.

**6.** Petitioner's claim that the prosecutor also challenged Clois Bell's credibility was addressed in the previous section.

Petitioner supports his allegation with the following excerpt from the prosecutor's rebuttal argument:

> Now, [defense counsel] in his closing argument says, well, the Defendant says he can't remember. *And the People believe he implies we should let him off because he didn't come up with a pretty good lie for you.* Ladies and gentlemen, the Defendant is not charged with being a liar or a bad liar; *that he's a liar we already know.* According to Anthony Hunt, he lied when he called 911. According to Loretta Price, he lied when he said the mysterious man in black shot her. According to his own mother, he lied when he said: Mom, she grabbed the barrel of the gun and the gun went off. This is a man who lies to the police to make himself look better. *What do you think he's going to do with you, ladies and gentlemen? He's going to lie to you too. He's going to do whatever it takes to make him look as good as possible.*

*Id.* at 151 (emphasis added by petitioner).

A prosecutor may not "express a personal belief or opinion in the truth or falsity of any testimony." *United States v. Collins,* 78 F.3d 1021, 1040 (6th Cir.), cert. denied, 519 U.S. 872, 117 S.Ct. 189, 136 L.Ed.2d 127 (1996). Counsel may, however, argue reasonable inferences from the evidence and, when there is conflicting testimony, counsel may even infer that one side is lying. *Id.*

Here, the prosecutor called petitioner a "liar" based on clear evidence that petitioner had, in fact, lied several times. As the Michigan Court of Appeals noted, the prosecutor did not invoke the prestige of his office, and he did not refer to his personal knowledge. Instead, he summarized the testimony of witnesses testimony indicating that petitioner had lied to them, and he asked the jury to judge petitioner's testimony as untruthful on that basis. The Michigan Court of Appeals determined that the prosecutor's arguments were not improper.

Petitioner himself testified that he lied to Officer Loretta Price by telling her that a man in black shot Damarius. He also indirectly admitted that he had lied to his mother about Damarius grabbing the barrel of the shotgun. *See* TT III at 97 & 99. He testified that he had asked his friend Anthony Hunt to say that someone else had shot Damarius. *See id.* at 97, 99, & 103–04. The prosecutor's argument, therefore, was a reasonable inference from the evidence, and it did not prejudice the defense.

### c. Asking Petitioner about the Credibility of Other Witnesses

■ Petitioner alleges that the prosecutor improperly attempted to elicit his opinion about the credibility of the prosecution's witnesses. The disputed cross-examination reads as follows:

Q [by the prosecutor] And your friends include Anthony Hunt, correct?

A [by petitioner] Yes.

Q And you heard his testimony about what happened at that house on Fairfax, correct?

A Yes.

Q And he's telling the truth about what happened at—on Fairfax, correct?

A I wouldn't I(sic) say the whole truth, no.

Q What's he saying that's not the truth?

A He saying a lot of things I know it weren't the truth.

Q Such as?

A Such as me being a killer, like he—he presented it like I meant—intend to kill her. It wasn't like that. It was like—

Q So you're saying that when Mr. Hunt says that you threatened to kill Miss Cooper there, that he's not telling the truth?

A Yes, he did.

Q Yes, he did what?

A Not telling the truth.

Q Okay. And when Miss Blackmon says that you threatened to kill her there, she's not telling the truth either, correct?

A Yes.

*Id.* at 102–03.

Although the Court of Appeals agreed that this conduct was improper under state law, petitioner has not shown that the prosecutor's questions deprived him of a fair trial under federal constitutional standards. The prosecutor did not bolster the credibility of prosecution witnesses or express his own opinion about their credibility.

Petitioner responded to the prosecutor's questions by indicating that he had not threatened to kill Damarius. This was consistent with his testimony on direct examination and with his overall defense that the shooting was an accident.

Officer Dan Kuhn provided some support for petitioner's denial of intent to kill by indicating that Damarius informed him that petitioner had slapped her on the face during the incident on April 16, 1993. Apparently, Damarius had not reported to Office Kuhn that petitioner threatened to kill her. *See* TT II at 49–51. The court concludes that the prosecutor's questions to petitioner about whether other witnesses were truthful did not prejudice the defense.

#### d. Evoking an Emotional Response

■ Petitioner's final claim of prosecutorial misconduct is that the prosecutor attempted to evoke an emotional response from the jury. Petitioner supports his claim with the following trial excerpt:

Q [by the prosecutor] You pulled the trigger and drilled this hole right in her head, didn't you, Mr. Welch?

A. [by petitioner] You put like I trying to kill her. Anything—it wasn't like that.

Q You did more than just try and kill her, you finished her off with one shot, didn't you, Mr. Welch? Isn't that true?

THE WITNESS: Do I answer that question like that?

THE COURT: Yes.

THE WITNESS: Yes, if you—if you put it that way.

TT III at 117.

Petitioner also objects to the following comments made during the prosecutor's rebuttal argument:

Once again, we do not deny that he regrets what happened. We don't deny that he regrets what happened the instant after it happened when the blood spurted back and the piece of skull was shot out of her and the shell rammed into her brain.... [S]he's not a fictional character. She's a real human being. And Mr. Welch had never seen anybody shot before. But now he knows what happens. Now he knows not only what happens, but how it looks when it's all done.

*Id.* at 153–54.

A prosecutor may not make "repeated and deliberate statements clearly designed to inflame the jury and prejudice the rights of the accused...." *Sizemore v. Fletcher,* 921 F.2d 667, 670 (6th Cir.1990). Here, however, the pathologist had testified that Damarius was shot in the back of the neck at close range. The pathologist also testified that he had recovered plastic wadding, metal screws, part of a rock, and some beads from the victim's neck. *See* TT II at 137, 141. As previously noted, a graphic photograph of Damarius' body during the autopsy was admitted into evidence. Thus, the jurors had already been exposed to gruesome evidence, and the prosecutor's questions and statements could not "have tipped the scales in favor of the prosecution." *Robison v. Maynard,* 829 F.2d 1501, 1509 (10th Cir.1987). Moreover, the trial court instructed the jurors not to let sympathy or prejudice influence their decision, *see* TT III at 159, and the Michigan Court of Appeals found no error in the prosecutor's questions and argument.

### e. Summary

The alleged prosecutorial misconduct did not rise to the level of constitutional error. It was neither excessive nor persistent. Additionally, the trial court informed the jurors that the attorneys' questions, statements, and arguments were not evidence. *See* TT III at 161.

Given the overwhelming evidence against petitioner, the court concludes that the jurors must have been swayed by the facts and not the prosecutor's conduct. *Robison,* 829 F.2d at 1509. Accordingly, petitioner has not satisfied the prejudice prong for ineffective assistance of counsel and, therefore, he has not established cause for his state procedural default.

For similar reasons, petitioner has not shown that the alleged prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). Therefore, petitioner also has not established prejudice for purposes of state procedural default analysis.

### 4. Miscarriage of Justice

The remaining question is whether this court's failure to consider petitioner's fifth claim on the merits will result in a miscarriage of justice. The exception for miscarriages of justice requires showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326–27, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995); *Murray v. Carrier,* 477 U.S. at 496, 106 S.Ct. 2639. " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. U.S.,* 523 U.S. 614, ——, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851.

Petitioner has not presented any new reliable evidence demonstrating that he is innocent. Therefore, a miscarriage of justice will not occur if the court declines to review petitioner's fifth claim on the merits. Petitioner's state procedural default bars habeas review of his fifth claim.

### H. Claim VI—Use of Inaccurate Information at Sentencing

Petitioner's sixth claim is that the trial court considered inaccurate information when imposing his sentence. Specifically, petitioner contends that the trial judge based petitioner's sentence on an inaccurate statement of the law and on the judge's personal experiences. Petitioner asserts that he should be sentenced before a different judge to preserve the appearance of fairness and justice.

### A. Clearly Established Federal Law

Offenders possess a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude." *See Roberts v. United States,* 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980) (quoting *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972)). A sentence based on extensively and materially false information that the prisoner had no opportunity to correct violates due process. *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948).

Nevertheless, the nature or source of information that sentencing judges may consider is largely unlimited. *See United States v. Watts,* 519 U.S. 148, 151, 117 S.Ct. 633, 635, 136 L.Ed.2d 554 (1997); *Williams v. People of State of New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949). To prevail on his claim, petitioner must demonstrate that the disputed information was materially false and that the trial court relied on the information. *See Collins v. Buchkoe,* 493 F.2d 343, 345–46 (6th Cir.1974).

### B. Alleged Misstatement of Law

■ In dispute are the following comments made by the trial court at sentencing:

I can only say that I'm a hunter and the basic thing with guns is the first thing is whether it's loaded or not, *you assume it's loaded and you never point it at anybody*. That's just the base start position.

So when the jury has made this decision on the fact that this gun was loaded and you knew it, that's fairly logical because nobody points a gun, whether it's loaded or not, without assuming that it's loaded. And the fact that somehow you and your peers think it's cool to point guns at people, you have to—*you are charged with the fact that you intend to kill somebody when you point a gun at somebody*. I don't care whether it's loaded or not. That's not even a question. You just don't do it.

ST at 7–8 (emphasis added by petitioner).[7]

Petitioner concludes from these comments that the trial judge based the sentence on a mistaken belief that an intent to kill exists when a person points a gun at a person even if the gun is unloaded. Petitioner alleges that, to convict him of murder, there had to be proof that he knew the gun was loaded.[8]

The trial judge's comments viewed in their entirety indicate that he sentenced petitioner on the basis of the jurors' conclusion that petitioner had possessed the intent to kill. The trial judge was mindful of what he called the glorification of guns

and societal acceptance of violence against women. *See id.* at 6–11.

Petitioner was given an opportunity to speak at sentencing. He maintained that he did not intend to kill Damarius Cooper, but he did not object to the trial court's comments. *See id.* at 4–12.

The Michigan Court of Appeals subsequently concluded that the trial court did not misstate the law. The Court of Appeals also found petitioner's argument that there had to be proof that he knew the gun was loaded strained credulity. This court is bound by the state court's decision on issues of state law. *See Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975). To conclude, petitioner has not demonstrated that the trial court sentenced him on the basis of inaccurate information. Rather, the trial court apparently was mindful of the jurors' verdict, which indicated that they had determined petitioner intended to kill Damarius Cooper. Because the state court's decision was not contrary to clearly established federal law as set forth by the Supreme Court, petitioner's claim has no merit. *See* 28 U.S.C. § 2254(d).

### C. Reliance on Personal Experiences

■ Petitioner alleges that the trial court improperly considered the death of his own child and sympathized with the victim's family when imposing the sentence. Petitioner implies that the trial court was biased.

The Michigan Court of Appeals addressed petitioner's claims as follows:

Ohio offers the following sentiment. "... I am again reminded of the basic lesson taught to me by my father and grandfather and passed on to my children: Always assume a gun is loaded. Never point a gun at anything you don't intend to shoot. It is always an 'unloaded' gun that injures or kills someone." G. Terrance Reuland, *The Cincinnati Enquirer,* July 14, 1996. An Idaho article articulates that "... [b]asic knowledge and common-sense safety practices can prevent tragedy. Rules for teens and adults: 1. Always assume a gun is loaded...." *The Idaho Statesman,* December 30, 1996.

---

7. "ST" refers to the transcript of the sentence proceeding held on December 22, 1993.

8. Despite petitioner's criticism of the trial court's comments regarding gun safety, the practice of always handling a gun as if it were loaded is well known and commonly accepted. Newspaper articles from around the country, for example, show this to be true. An article from California explains that "[f]irearm instructors drill the lesson home for every novice: always assume a gun is loaded...." Timothy Wheeler, *San Diego Union–Tribune,* Oct. 2, 1998. An author from

Similarly we find no merit to defendant's argument that the trial judge's comment about his own loss of a child indicated that the court was biased or that it considered an improper factor when imposing sentence. Viewed in the context of the entire sentencing proceeding, it is evident that the court did not believe that defendant comprehended the magnitude of his crime, and therefore the court was attempting to impress upon defendant the ramifications of what he had done. By referring to the court's own loss, the court was attempting to remind defendant of Damarius' parents' pain. The judge was also trying to personalize the loss, by suggesting how defendant might feel if anything happened to defendant's own son, Reggie, Jr.

*People v. Welch,* No. 172980 at 6.

This court agrees that the trial court was merely trying to explain the seriousness of the crime and the fact that Damarius Cooper's family was devastated by her death. The trial court appreciated petitioner's statement of regret, and there is no indication that the trial court was biased. *See* ST 6–9. Accordingly, the state appellate court's determination that petitioner's claim was without merit is not contrary to Supreme Court precedent, and petitioner's claim does not warrant habeas corpus relief. *See* 28 U.S.C. § 2254(d).

### I. Claim VII—Disproportionate Sentence

#### A. State Law Claim

■ Petitioner's seventh claim is that his sentence violates the principle of proportionality established in *People v. Milbourn,* 435 Mich. 630, 461 N.W.2d 1 (1990). Petitioner also alleges that the trial court abused its discretion by making an upward departure from the sentencing guidelines.

Petitioner's claims under *Milbourn* and under the state sentencing guidelines raise only issues of state law, *see Atkins v.*

*Overton,* 843 F.Supp. 258, 260 (E.D.Mich. 1994); *Thomas v. Foltz,* 654 F.Supp. 105, 106–07 (E.D.Mich.1987), and this court may not issue the writ of habeas corpus on the basis of perceived error of state law, *Lindh,* 96 F.3d at 856; *Floyd,* 148 F.3d at 619.[9] Accordingly, petitioner's state law claim concerning his sentence is not cognizable on habeas review. *See Floyd,* 148 F.3d at 619; *see also* 28 U.S.C. § 2254(a).

#### B. The Constitutional Issue

■ The court could construe petitioner's claim as one brought under the Constitution. However, the duration or severity of a sentence that is within the limits set by statute generally is not a ground for habeas relief. *Townsend,* 334 U.S. at 741, 68 S.Ct. 1252. Petitioner's sentence was consistent with the statutory penalty of life in prison or any term of years for second-degree murder. *See* M.C.L.A. § 750.317; M.S.A. § 28.549.

■ Additionally, the trial judge explained that he exceeded the guidelines because he thought the guidelines did not adequately reflect the pervasiveness of guns and violence in society. The trial court's emphasis on what he considered to be an epidemic of violence suggests that he also might have intended to deter others from crime. *See* ST at 6–8.

Moreover, in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), a plurality of the Supreme Court concluded that the Eighth Amendment contains no requirement of strict proportionality between the crime and sentence. *Id.* at 965, 111 S.Ct. 2680. The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *Id.* at 1001, 111 S.Ct. 2680 (quoting *Solem v. Helm,* 463 U.S. 277, 288, 303, 103 S.Ct. 3001, 3008, 3016, 77 L.Ed.2d 637 (1983)); *United States v. Hopper,* 941 F.2d 419, 422 (6th Cir.1991).

9. The Michigan Court of Appeals concluded that petitioner's life sentence did not violate the principle of proportionality.

The Supreme Court upheld Harmelin's sentence of life in prison without the possibility of parole for possession of more than 650 grams of cocaine. In contrast, petitioner took the life of the seventeen-year old mother of his child, and he is not precluded from applying for release on parole at an appropriate time. Because the Supreme Court found Harmelin's life sentence without parole to be constitutional, this court concludes that petitioner's sentence for second-degree murder is not extreme or grossly disproportionate to the crime. Therefore, the state appellate court's decision was not contrary to, or an unreasonable application of federal law as established by the Supreme Court in *Harmelin.* Petitioner's seventh claim does not warrant habeas corpus review. *See* 28 U.S.C. § 2254(d).

### J. Claim VIII—Ineffective Assistance of Counsel

 Petitioner's eighth and final claim is that his trial attorney rendered ineffective assistance of counsel by not objecting to the prosecutor's and the trial judge's alleged misconduct. To prevail on a claim of ineffective assistance, petitioner

> must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable.
>
> . . . .
>
> Judicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . .

*Strickland,* 466 U.S. at 687, 689, 104 S.Ct. 2052. "Pursuant to the amended standards of review codified in the AEDPA . . ., federal habeas courts must now honor the conclusions of state courts regarding the constitutional effectiveness of counsel, unless such determinations constitute an 'unreasonable application' of established federal law, as determined by the Supreme Court." *Carter v. Johnson,* 110 F.3d 1098, 1110 (5th Cir.), *vacated on other grounds,* —— U.S. ——, 118 S.Ct. 409, 139 L.Ed.2d 313 (1997).

The Michigan Court of Appeals concluded that petitioner was not denied effective assistance of counsel because defense counsel's performance could be interpreted as decisions based on sound trial strategy. For the reasons given in sections II. D–G. above, this court concludes that petitioner has not demonstrated both the deficient performance prong and the prejudice prong for ineffective assistance of counsel. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052 (requiring a showing of deficient performance and prejudice to prevail on a claim of ineffective assistance of counsel).

Therefore, the state appellate court's determination that petitioner was not denied ineffective assistance of counsel was a reasonable application of the standard in *Strickland.* The state court's decision was not "so clearly incorrect that it would not be debatable among reasonable jurists." *Drinkard,* 97 F.3d at 769. Accordingly, petitioner has no right to habeas relief on the basis of his eighth and final claim. 28 U.S.C. § 2254(d).

### III. Conclusion

Petitioner's claims have no merit. Accordingly, the court DENIES the petition for a writ of habeas corpus.